[Civ. No. 3601. Second Appellate District, Division One.—June 6, 1921.]

FRANK L. SHAW, Respondent, v. UNION ESCROW AND REALTY COMPANY (a Corporation), Appellant.

[1] VENDOR AND VENDEE—REFUSAL OF VENDOR TO CONVEY—BAD FAITH — NEGLIGENCE — MEASURE OF DAMAGES. — It is not necessary, in order to establish bad faith within the meaning of section 3306 of the Civil Code, that the vendor be shown to have refused to go on with the transaction because of some gain which would accrue to him. It is sufficient if he refuses to convey, where through his own negligence he has put it out of his power to fulfill the obligations of his contract. (On petition for hearing by the supreme court, approval withheld.)

[2] ID. — ACTION BY VENDEE TO RECOVER DAMAGES — BAD FAITH — PLEADING.—In an action to recover damages alleged to have been sustained by plaintiff because of breach by defendant of a contract to convey real property, a complaint alleging the making of the contract, the breach thereof, the value of the property at the time of the breach, and that defendant "without any just cause or just excuse" refused to make conveyance of the property, sufficiently presents the issue as to the bad faith of defendant.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Haas & Dunnigan and Bordwell & Mathews for Appellant.

Bicksler, Smith & Parke for Respondent.

JAMES, J.—This action was brought to recover damages alleged to have been sustained by the plaintiff because of breach of contract to convey real property. There was a judgment in plaintiff's favor and defendant has appealed therefrom.

On the fifth day of June, 1919, defendant, then being the owner of two certain lots of land, entered into a written contract with the plaintiff whereby it agreed to sell and plaintiff agreed to buy the property. The purchase price as fixed by the contract was the sum of $1,500 and was made payable $200 upon the execution of the contract, the remainder in sums of $20 (or more) with interest monthly, the installments to be payable on the fifth day of each month after the date of contract. The plaintiff made the initial payment on the fifth day of June in the year mentioned; he made the further payment on July 5th of $20, and on the fifth day of August, 1919, tendered the third payment of $20, which defendant refused to accept. Thereupon, or within a few days, the plaintiff made a tender of the entire remainder of the purchase price agreed upon and demanded a conveyance of the property, which demand was refused. Defendant's refusal to comply with its agreement was based upon the following facts: On May 26, 1919, an employee of the defendant, who was duly empowered to act in that manner, wrote a letter to a firm of real estate agents authorizing them to sell the same property which was later bargained for by the plaintiff. The letter written to the agents authorized them to "sell on or before thirty days from date" the property therein referred to and contained a statement that a commission of five per cent would be paid for their services. It seems that the employee who had the preliminary negotiations with the plaintiff respecting the sale of the same property was not advised of the fact of the sending of this letter. However, the court found that on "about" June 10, 1919, the agents referred to notified defendant that they had sold the lots in conformity with the terms of the letter of authorization. On the 21st of June, 1919, the general officers of the defendant corporation executed the deed to the purchaser produced by the agents. At the time the deed was made the employee of defendant who prepared the deed had no actual knowledge of the existence of the contract made with plaintiff. It was between August 1 and

August 14, 1919, that this employee communicated the facts regarding the sale to the employee who had dealt with plaintiff. It appeared in evidence, and the findings express the fact, that the price obtained through the real estate agents was not as much as that agreed to be paid by the plaintiff, the difference being about $300. The defendant offered to pay back to the plaintiff all moneys delivered to it by him before the action was commenced. At the trial the plaintiff produced evidence showing that between the date of his contract and the date of the breach committed by defendant there had been a large increase in the value of the property, and the court found that on the fourteenth day of August, 1919, being the date when the plaintiff was advised that defendant would not fulfill its contract, the property was of the value of $7,000, and there was ample evidence to sustain that finding. The judgment was computed accordingly, by the making of required deductions, leaving the sum of $5,907 which plaintiff was held to be entitled to recover. This recovery was allowed under the finding that defendant had shown bad faith. Section 3306 of the Civil Code provides as follows: "The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach, and the expenses properly incurred in preparing to enter upon the land." The main contention of the defendant in its attack upon the judgment is that a case of bad faith was not shown, and that the measure of plaintiff's recovery was limited to such sums as had been paid on account of the purchase price, together with interest thereon. Under the evidence presented to the court it appears that the subordinate employees of defendant corporation who participated in the two transactions, to wit, that with plaintiff and that with the real estate firm, had within their control means of ascertaining exactly what had been done by either with respect to the property, and the case as made out is one of the clearest kind of negligence shown to have been committed in negotiating the sale of the property in question to two different parties at the same time. By the ap-

pellant the suggestion is made that the letter to the agents constituted a valid option to purchase of prior date to the contract with the plaintiff. We have already characterized that letter as an agent's authorization to sell and it can be called nothing more. Whether it amounted to an authorization giving the exclusive right to sell to the particular agents it is not necessary to decide, as it would not add any weight to appellant's position. Not only was it lacking in sufficient terms to constitute it an option, but no consideration was paid for it. The contract with the plaintiff was executed, and the initial payment of $200 made several days before the defendant had any notice from the agents that a purchaser had been secured by them. [1] As we understand the law it is not necessary, in order to establish bad faith within the meaning of section 3306 of the Civil Code, that the vendor be shown to have refused to go on with the transaction because of some gain which would accrue to him. It is sufficient if he refuses to convey, where through his own negligence he has put it out of his power to fulfill the obligations of his contract. It has been characterized as an anomaly in the law of damages which prevents a vendee under a contract for the purchase of real property from collecting in all cases full compensatory damages which would ordinarily and naturally include damages for what is termed "loss of bargain," the accepted rule being that a person is entitled to have in damages the worth of that which would have been rendered him under full performance of the contract. Placing contracts to convey realty in an exceptional class, very early cases, notably that of *Flureau* v. *Thornhill,* 2 Wm. Black. 1078, determined, as expressed by Chief Justice De Gray, that: "Upon a contract for a purchase, if the title prove bad and the vendor is (without fraud) incapable of making a good one, I do not think that the purchaser can be entitled to any damages for the fancied goodness of the bargain which he supposes he has lost." Considerable difficulty was encountered in subsequent decisions in reconciling the holding there announced with different facts presented, and the effort to so distinguish the cases seems not to have been always successful. The exceptional rule is justified on the reason given as that a vendor who contracts to convey a good title in the future, and who is unable to make such title clear, notwithstanding

his best efforts so to do, should not be held for damages other than those which will return to the opposite party the purchase money paid together with interest; and within the limitations of that reason the rule should find its scope. A full discussion of the history of the law may be found in any of the standard works on damages. (See 3 Joyce on Damages, sec. 1728; 3 Sedgwick on Damages, 9th ed., sec. 1002; 2 Sutherland on Damages, 3d ed., sec. 578.) We find no decisions in this state which have directly adjudicated the matter from the angle presented here. The cases of *Easton* v. *Montgomery*, 90 Cal. 307, [25 Am. St. Rep. 123, 27 Pac. 280]; *Clark* v. *Yocum*, 116 Cal. 515, [48 Pac. 498], in some degree of inference support the conclusions herein expressed. A case closely in point is that of *Sweem* v. *Steele*, 5 Iowa, 352. The court there said: "If the person selling is honest, and is prevented from making the conveyance by unforeseen causes, and which he could not control, the plaintiff should recover only nominal damages. But if the person selling is in fault, and either *did or should have known that he could not comply with his undertaking;* or, *having the title at the time of the agreement, afterward disables himself from completing it, by sale to a third person;* or, at the time of the agreement knew he had no title— in these, and in all cases where the inability arises from fraud in the covenantor, the purchaser should recover substantial damages, including compensation for any actual loss, as by the increased value of the land to the time the contract should have been executed." (Citing cases.) To our mind the code provisions have added nothing to the law already established when it is declared that in case only of bad faith on the part of the vendor damages may be recovered because of profits which might have accrued to the purchaser.

[2] Appellant makes the further contention that the complaint in the action did not state facts sufficient to present the issue as to the bad faith of defendant. The complaint did allege the making of the contract, the breach thereof, the value of the property at the time of the breach, and that the defendant "without any just cause or just excuse" refused to make conveyance of the property. We think that the complaint was sufficient and that it tendered all of the issues which were passed upon by the court. If

it was imperfect in any respect the defect was waived by the reason that there was no demurrer to the complaint and the parties proceeded throughout the trial with the evident view that all of the issues adjudicated were properly before the court. We find no error to justify a reversal of the judgment.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 4, 1921, and the following opinion then rendered thereon:

THE COURT.—The application for a hearing in this court after decision by the district court of appeal of the second appellate district, division one, is denied.

We are not prepared to accede to the unqualified statement that gross negligence is the equivalent of bad faith as that term is used in section 3306 of the Civil Code. In this case, however, the court below made a finding ''that the defendant acted in bad faith in refusing to carry out its contract with plaintiff and to convey said property to plaintiff on August 14, 1919, and in having conveyed said property to R. M. Goodman on June 21, 1919, without making in said conveyance provisions for the protection of plaintiff's rights in said property secured to him under the contract of June 5, 1919.''

Upon looking into the evidence in the case we are satisfied that there was sufficient therein to justify the trial court in finding that the conduct of the defendant in so refusing to perform its contract with the plaintiff amounted to bad faith within the meaning of that term as used in said section 3306.

Shaw, J., Sloane, J., Shurtleff, J., Lawlor, J., and Lennon, J., concurred.