[No. D039894. Fourth Dist., Div. One. May 14, 2003.]

RESIDENTIAL CAPITAL, LLC, Plaintiff and Appellant, v.
CAL-WESTERN RECONVEYANCE CORPORATION et al., Defendants
and Respondents.

808

**COUNSEL**

Turner & Maasch and Mark A. Maasch for Plaintiff and Appellant.

Moss Pite & Duncan, Steven W. Pite and Peter J. Salmon for Defendants and Respondents.

## Opinion

**HUFFMAN, Acting P. J.**—This action arises out of a nonjudicial foreclosure sale conducted under the power of sale in a trust deed encumbering residential real property (property). Plaintiff Residential Capital, LLC (Residential Capital), submitted the high bid at the sale. However, defendant Cal-Western Reconveyance Corporation (Cal-Western), the trustee under the trust deed, did not deliver to Residential Capital a trustee's deed to the property because it learned after the bidding that the trustor (Arvizus) and the beneficiary (Bank One) under the trust deed had agreed to postpone the sale. (Civ. Code, § 2924g, subd. (c)(2).)[1] Residential Capital sued Cal-Western and Bank One (together defendants) for damages, alleging causes of action for breach of contract and negligence. The trial court granted defendants' motion for summary judgment and entered judgment for the defendants. Residential Capital timely appealed the judgment.

Residential Capital contends that by making the high bid at the foreclosure sale it entered into a binding contract with Cal-Western and its principal, Bank One, to purchase the property, and that it is entitled to breach of contract damages under section 3306. It argues the postponement of the trustee's sale by agreement between the beneficiary Bank One and the trustor Arvizus made before the bidding did not result in a void sale contract. Residential Capital further seeks damages on the basis of negligence or negligent misrepresentation based on the manner in which the foreclosure sale was conducted. We conclude that the trial court properly applied the law to the undisputed facts and affirm the judgment in favor of Cal-Western and Bank One. (Code Civ. Proc., § 437c.)

### Factual and Procedural Background

Arvizus borrowed $124,000 from Bank One's predecessor in interest to purchase the property. The loan was secured by a trust deed encumbering the property. Arvizus defaulted on the loan in January 2000 and Bank One began nonjudicial foreclosure proceedings. (§ 2924.) Bank One used a loan servicing agent, HomeComings Financial Network (HomeComings), to represent it in the foreclosure proceedings. Pursuant to HomeComings' instructions, Cal-Western as trustee recorded a March 2000 notice of default and a notice of sale to be conducted on September 26, 2000. Cal-Western made the proper mailings and postings for the foreclosure process. (§ 2924 et seq.)

However, HomeComings negotiated a repayment plan with Arvizus, which cured the default and reinstated the loan. Bank One and Arvizus orally

---

[1] All further statutory references are to the Civil Code unless otherwise specified.

agreed to postpone the foreclosure sale. On September 25, 2000, a Home-Comings representative sent an e-mail to a Cal-Western representative instructing it to postpone the next day's sale. (§ 2924g, subd. (c)(2): "The trustee shall postpone the sale . . . where stayed . . . by the mutual agreement, whether oral or in writing, of any trustor and any beneficiary or any mortgagor and any mortgagee.") However, the Cal-Western representative did not read the e-mail, and the foreclosure sale proceeded as scheduled. Residential Capital was the high bidder for $153,500 and tendered cashiers' checks to Cal-Western to cover its bid.

Cal-Western realized the day after the bidding that there had been an agreement between Bank One and Arvizus to postpone the sale, and advised Residential Capital that it did not have the authority to conduct the sale and the trustee's deed would not be issued. Cal-Western returned Residential Capital's checks, with a check for three days of interest accrued on the amount tendered. Residential Capital accepted the refund without waiving its right to sue.

On November 30, 2000, Residential Capital sued Bank One and Cal-Western on theories of breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and negligent misrepresentation. It sought to hold Bank One and Cal-Western equally liable as agents of each other in the conduct of the foreclosure sale proceedings.

Defendants brought a motion for summary judgment or adjudication of issues, and Residential Capital brought a cross-motion for summary adjudication. (Code Civ. Proc., § 437c.) Defendants took the position that no contract had been formed between Residential Capital and themselves. They argued that because of the suspension of Cal-Western's authorization to conduct the sale that arose from the agreement between Bank One and Arvizus to postpone the foreclosure sale the foreclosure sale was void. They argued Residential Capital had sustained no damages because the funds had been returned with interest. They also argued there were no facts to support any claims for negligent misrepresentation or negligence, because there was no knowledge of falsity or intent to induce reliance, and no duty violated that was owed to purchasers at the foreclosure sale.

Residential Capital sought summary adjudication that it should prevail on its breach of contract claim, and that defendants owed it a duty to exercise due diligence in the foreclosure sale proceedings. The trial court allowed further factual material to be submitted in response to evidentiary objections. The property was valued at $205,000.

The trial court granted defendants' motion for summary judgment. It stated that the unrefuted evidence was that prior to the foreclosure sale and prior to delivery of the trustee's deed, the beneficiary and the trustor agreed to postpone the foreclosure sale, but Cal-Western had nevertheless proceeded with the sale. Although Residential Capital was the successful bidder for the property, on learning of the agreement to postpone the sale, Cal-Western made a full refund of the purchase price plus three days of accrued interest. The court stated: "Under the facts of this case, including that the deed was never delivered to Plaintiff, the sale conducted on September 26, [2000], was void. Because the sale was void, the appropriate remedy for any damage to Plaintiff was the return of the purchase price, plus accrued interest. See Moeller v. Lien (1994) 25 Cal.App.4th 822 [30 Cal.Rptr.2d 777] and Little v. CFS Service Corporation (1987) 188 Cal.App.3d 1354 [233 Cal.Rptr. 923]. Because the purchase price plus interest was tendered to Plaintiff, it has sustained no damage and an essential element to all of its causes of action is not present. [¶] In addition to having sustained no damage, the Court notes that the first and second causes of action of the complaint predicated on a contract lack merit because '[a] void contract cannot be given any effect whatever.' Little, supra, at 1362. And, as to the negligence cause of action the Court concludes Defendants did not owe the duty Plaintiff attempts to impose on them in this case."

Therefore, defendants' motion was granted, and Residential Capital's motion for summary adjudication was taken off calendar as moot. Judgment was entered for defendants and Residential Capital appeals.

DISCUSSION

We review the trial court's grant of the summary judgment motion filed by defendants Cal-Western and Bank One under an independent review standard. (Buss v. Superior Court (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766]; Angell v. Superior Court (1999) 73 Cal.App.4th 691, 698 [86 Cal.Rptr.2d 657] (Angell).) "Since the facts are generally undisputed, only legal issues are presented." (Angell, at p. 698.)

I

*Breach of Contract*

Residential Capital argues that under hornbook contract law, the foreclosure sale conducted after the postponement agreement was not void but merely illegal. (§ 2924g, subd. (c)(2).) Under this theory, it argues, the illegal contract is voidable or unenforceable as to the trustor, Arvizus,

precluding specific performance to enforce transfer of the property, but nevertheless was subject to ratification by Residential Capital, permitting breach of contract damages against the trustee, Cal-Western, and the beneficiary, Bank One. Residential Capital contends the defendants have created conflicting contractual obligations. First, it argues that defendants were obligated to Arvizus to reinstate the loan and trust deed and postpone the sale, and second, to Residential Capital, to pay damages for its breach of contract. Defendants respond that the foreclosure sale was void. We consider these contractual theories in the context of the leading cases of *Moeller v. Lien, supra,* 25 Cal.App.4th 822 (*Moeller*) and *Little v. CFS Service Corp., supra,* 188 Cal.App.3d 1354 (*Little*), on which the trial court relied.

## A

### *Secondary Authorities*

Residential Capital argues the facts in this case justify a reexamination of the law, based in part on the acknowledgement in *Little, supra,* 188 Cal.App.3d 1354, that in the case law, the terms "void, voidable, and invalid appear to be used interchangeably." (*Id.* at p. 1358, italics omitted.) The *Little* court referred to the "general rule" on voidness or voidability of a trust deed foreclosure sale, as set out in a treatise: " '[D]efects and irregularities in a sale under a power render it merely voidable and not void. . . . However, substantially defective sales have been held void where the defect lay in a particular as to which the statutory provision was regarded as mandatory. . . .' [Citation.] 'A sale under a power in a mortgage without reasonable notice will be set aside.' [Citation.]" (*Ibid.*)

Residential Capital argues the foreclosure sale contract in this case should not be considered to be a void contract, because void contracts have no legal effect and cannot become enforceable, even if subsequently affirmed or ratified. (1 Corbin on Contracts (rev. ed. 2002) § 1.7 (Corbin); see also 1 Williston on Contracts (4th ed. 1990) Definition of Terms, § 1:20, p. 49.) Residential Capital argues it should be allowed to affirm or ratify the sale contract here and the contract should therefore be characterized as voidable or otherwise unenforceable, rather than void. It argues the sale contract should be so characterized because section 2924g, subdivision (c)(2), does not identify the consequence of noncompliance with its procedures.[2]

■ Unless a statute expressly deprives the parties of their right to sue on a contract made in violation of that statute, the right to recover on the

---

[2]Section 2924g governs the conduct of a sale under the power of sale contained in any trust deed or mortgage, and the time and place and any sale postponements. Under subdivision (a), the sale shall commence at the time and location specified in the notice of sale, unless any

contract will not be denied, if denial of recovery would be out of proportion to the demands of public policy. (6 Williston (4th ed. 1995) Illegal Agreements, § 12:4, pp. 47-51.) "Thus, unless no other conclusion is possible from the words of a statute, it should not be held to make agreements contravening it totally void." (*Ibid.*) ▮ Residential Capital contends that no consequence is stated in section 2924g, subdivision (c)(2) for noncompliance and the sale contract it entered into at the foreclosure sale by making the highest bid should not be considered void. In contrast to section 2924g, subdivision (c)(2), Residential Capital refers to section 2934a, a provision dealing with the substitution of a trustee under a trust deed encumbering real property and conferring duties on the trustee with respect to the exercise of a power of sale, which expressly provides that if notice of sale does not contain information about a substituted trustee, "any sale conducted by the substituted trustee shall be void." (§ 2934a, subd. (c).) Thus, Residential Capital argues, the Legislature knows how to specify the consequences of statutory violations if it so intends that consequence.

Accordingly, Residential Capital argues that the sale contract here was not void, but rather contains the characteristics of a voidable contract, which are summarized in 1 Corbin, *supra*, section 1.6 as follows: " 'Voidable contract' is not a simple and uniform concept; detailed analysis of voidable contracts will show important differences. In every case, however, it will be found that one of the parties has the legal power, either of avoidance or of ratification, or of both. If the party having a power of avoidance—the infant, the lunatic, the defrauded party, the party affected by mistake—exercises it, such rights and duties as the transaction has created are terminated including those of the other party. The exercise of the power to ratify will in some cases create a duty that did not before exist and will always terminate a power of avoidance."

Residential Capital also refers to the usual rule that only an innocent party may avoid a voidable contract, and it, as the innocent party, does not wish to do so. It contends none of the circumstances that require the contract be avoided, including a grossly inadequate buying price, are present here. (6A Corbin, *supra*, § 1538; see *Crofoot v. Tarman* (1957) 147 Cal.App.2d 443, 447 [305 P.2d 56].)

---

postponement is announced at the time and location specified in the notice of sale for commencement of the sale, or pursuant to paragraph (1) of subdivision (c) (dealing with postponement of the sale proceedings at the discretion of the trustee or upon instruction by the beneficiary). Also, under subdivision (c) (2): "The trustee *shall postpone the sale* upon the order of any court of competent jurisdiction, or where stayed by operation of law, or *by the mutual agreement, whether oral or in writing, of any trustor and any beneficiary* or any mortgagor and any mortgagee." (Italics added.)

In a further argument, Residential Capital contends that the balancing approach of the Restatement Second of Contracts should be employed here. This approach, which represents a change from the first Restatement of Contracts, is described in 6 Williston, Illegal Agreements, *supra*, section 12:4, pages 7 through 13, as follows: "The Restatement (Second) no longer speaks in terms of illegal bargains, preferring instead to focus on whether a promise or term in an agreement is unenforceable on grounds of public policy. However, in making that determination, . . . the courts [will] consider the importance of any policy as reflected in legislation or judicial decision and the probability that the policy will be furthered by declaring a term unenforceable, as well as the extent to which the parties engaged in misconduct, its seriousness and deliberateness, and the degree of connection between the misconduct and the particular term at issue. These factors are then explicitly required to be balanced against the expectations of the parties, whether a forfeiture will result from a declaration of unenforceability, and finally, the public interest, if any, in enforcing that term." (Fn. omitted.)

Based on these secondary authorities, Residential Capital argues that because the defendants did not comply with the postponement provision of section 2924g, subdivision (c)(2), the contract was illegal and unenforceable by them, but on public policy grounds, Residential Capital as the high bidder at the sale should not be precluded from claiming damages arising from the contract it wishes to ratify. The public policies asserted are apparently the certainty that is desired in real property sales and the rule that a mistaken party should bear the consequences of the mistake. (See *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279, 1288 [102 Cal.Rptr.2d 711] (*6 Angels*) [where an alleged error in price was within a party's discretion and control, that party should be solely responsible for it].) Residential Capital complains that the inadequate procedures and communications used here by Cal-Western and Bank One, including the use of outside loan servicing to save on costs, resulted in the errors, and those costs savings to the defendants should not be without consequence.

Residential Capital further refers to the legislative history of a 1999 bill promoted by the California Trustee's Association, proposing changes to the duties and liabilities of a trustee in trust deed nonjudicial foreclosure proceedings. (Sen. Rules Com., Rep. on Assem. Bill No. 431 (1999-2000 Reg. Sess.).) This bill would have expanded the limited immunity granted to trustees for good faith reliance on information provided in good faith by the beneficiary. The cited bill was not passed. Residential Capital infers from its nonpassage that Cal-Western should not be entitled to immunity for its acts

that allegedly caused damage to Residential Capital. However, the nonpassage of the bill is of limited persuasive value in this context. (See 58 Cal.Jur.3d (1980 & 2003 supp.) Statutes, § 112, p. 110; *Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist.* (2001) 90 Cal.App.4th 64, 72-73 [108 Cal.Rptr.2d 715].)

B

*California Case Law*

Residential Capital contends the trial court misinterpreted the leading cases of *Little, supra,* 188 Cal.App.3d 1354, and *Moeller, supra,* 25 Cal.App.4th 822, on which it relied. Both these cases arose in the context of successful bidders at trust deed foreclosure sales, whose rights were unclear because of a defect in the notice or other alleged problems in the foreclosure proceedings.

In *Little, supra,* 188 Cal.App.3d 1354, the required notice of the trust deed nonjudicial foreclosure sale was not given to the trustor, junior lienor, or judgment creditor, all of whom had substantial potential claims to the real property encumbered by the trust deed. Because of the "substantial and prejudicial defective notice," the sale to the high bidder was held void. (*Id.* at p. 1362.) *Little* held that a refund of the bid amount with interest was a sufficient remedy for not completing the sale. (*Id.* at pp. 1361-1362.) The court's reasoning was based in part on a finding that the conclusive statutory presumption of section 2924 regarding the giving of proper notice did not arise, because the trustee's deed was never prepared, executed and delivered to the high bidder. (*Little, supra,* 188 Cal.App.3d at pp. 1360-1362.) Residential Capital argues *Little* is an exception to the usual rules regarding void and voidable contracts, and should be restricted to the situation in which the trustor was not given the required foreclosure sale notice.

In *Moeller, supra,* 25 Cal.App.4th 822, a trust deed nonjudicial foreclosure sale was held although the defaulting trustor was then attempting to arrange refinancing. The sale was held and a trustee's deed was delivered to the high bidders. The court ruled the sale had been conducted properly, and it was not dispositive nor an irregularity of sale that the trustor was unaware of the statutory right of a trustor to postpone the sale. (*Id.* at pp. 832-833.) After the trustee's deed was duly delivered to the high bidder, there was a conclusive presumption of validity under section 2924. (*Moeller, supra,* 25 Cal.App.4th at p. 831.) Even though the high bid at the foreclosure sale was lower than the value of the real property encumbered by the trust deed, the court held there was no basis to set aside the sale. (*Id.* at p. 833.) The court explained

the manner in which the conclusive presumption of validity of the sale arises on delivery of a trustee's deed under section 2924: "Although a nonjudicial foreclosure sale is generally complete upon acceptance of a bid by the trustee, the conclusive presumption does not apply until a trustee's deed is delivered. Thus, if there is a defect in the procedure which is discovered after the bid is accepted, but prior to delivery of the trustee's deed, the trustee may abort a sale to a bona fide purchaser, return the purchase price and restart the foreclosure process. [Citations.] [¶] . . . [A]n irregularity in the nonjudicial foreclosure sale coupled with a gross inadequacy of price may be sufficient to set aside the sale, where the conclusive presumption does not come into effect because the trust deed has not yet been delivered. [Citation.]" (*Moeller, supra,* 25 Cal.App.4th at p. 832.)

Residential Capital interprets *Moeller, supra,* 25 Cal.App.4th 822 to allow ratification of a sale by the issuance of the trustee's deed, which means the sale was voidable but not void, and *Moeller* is therefore inconsistent with *Little*. However, in *Moeller* the trustor did not request a postponement of the foreclosure sale, there were no delinquencies or improprieties or irregularities in the foreclosure proceedings, and the trustor made an untimely tender of the reinstatement amount. (*Moeller, supra,* 25 Cal.App.4th at p. 833.) The result in *Moeller* is not inconsistent with the result in *Little*, because in *Little* there were "substantial and prejudicial defective notice" defects (*Little, supra,* 188 Cal.App.3d at p. 1362) that justified the nondelivery of the trustee's deed following the foreclosure sale.

Although not cited by the trial court, two additional cases are relevant to our discussion. In *Angell, supra,* 73 Cal.App.4th 691, the notice of the nonjudicial trust deed foreclosure sale omitted one of the obligations secured by the trust deed. (*Id.* at p. 695.) This defect in notice was discovered after the foreclosure sale was held but before the trustee's deed was delivered to the high bidder. (*Id.* at p. 699.) The court relied on a commentator's analysis to hold that even though a foreclosure sale is completed for most purposes affecting the rights of the trustor when the final bid is accepted, this rule does not apply if a defect in the foreclosure procedure is discovered before the trustee's deed is delivered to the high bidder (citing 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 9:151, pp. 499-500). In that situation, there is no deed to create the section 2924 conclusive presumption of validity of the foreclosure sale in favor of a bona fide purchaser: " 'Therefore, if a defect in the foreclosure process is discovered after the trustee has accepted a bid, but prior to the delivery of the trustee's sale [*sic*], the trustee can abort the sale, return any funds received to the purchaser, plus interest, and process another foreclosure.' [Citation.]" (*Angell, supra,* 73 Cal.App.4th at p. 701.)

The *Angell* court adhered to the view expressed in *Little, supra,* 188 Cal.App.3d 1354, 1362, that although generally the real property is sold in a foreclosure at the moment the bid is accepted, and the execution of the trustee's deed to show that transfer of title is merely ministerial in nature, "the general rule is not applicable when a notice defect renders the sale void." (*Angell, supra,* 73 Cal.App.4th at p. 701.) There was a notice defect in *Angell,* and no transfer of title was completed. (*Id.* at p. 702.) Therefore, the sale was aborted and the consideration paid by the successful bidder, plus interest, was returned. (*Ibid.*)

In *6 Angels, supra,* 85 Cal.App.4th 1279, 1284-1285, the successful bidder at a trust deed foreclosure sale filed a quiet title action against the trustee after the trustee declined to deliver the trustee's deed to the real property encumbered by the trust deed because of a mistake in the price at which the sale bidding was opened. The court stated that " '[a] successful challenge to the sale requires evidence of a failure to comply with the procedural requirements for the foreclosure sale that caused prejudice to the person attacking the sale.' [Citation.]" (*Ibid.*) Unless there is a significant procedural error, a "mere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale." (*Ibid.*) In *6 Angels,* the trust deed beneficiary intended to set the opening bid at the sale at $100,000, but through a clerical error, the trustee was mistakenly instructed to open the bidding at $10,000, and the plaintiff made a successful bid of $10,000.01. The court granted summary judgment in favor of the bidder and entered a judgment of quiet title in the bidder's favor. The court found no significant procedural irregularity to justify setting aside the sale to the successful bidder. The clerical error in the amount of the opening bid was insufficient to invalidate the sale, because "this error, which was wholly under [the beneficiary's loan servicer's] control and arose solely from [the beneficiary's loan servicer's] own negligence, falls outside the procedural requirements for foreclosure sales described in the statutory scheme, and, like the secretary's error in *Crofoot,* is 'dehors the sale proceedings' [citing *Crofoot v. Tarman, supra,* 147 Cal.App.2d at p. 447, dealing with an erroneous postponement sale date given to a corporation allied with the debtor by the prospective new buyer in foreclosure, through that buyer's attorney's office]. Because there is no procedural error here independent of the inadequacy of price, we conclude that summary adjudication was properly granted." (*6 Angels, supra,* 85 Cal.App.4th at p. 1285.)

Also, in *6 Angels, supra,* 85 Cal.App.4th 1279, the successful bidder was not required to be a bona fide purchaser to enforce the sale. The court

reached this conclusion in accordance with its understanding of the applicable public policies underlying the statutory framework governing foreclosure sales, i.e., "a concern for swift, efficient, and final sales." (*Id.* at p. 1287, citing *Moeller, supra,* 25 Cal.App.4th at pp. 830, 832.) "In our view . . . , granting relief under the circumstances present here would frustrate, rather than promote, this policy, by adding uncertainty to the finality of foreclosure sales." (*6 Angels, supra,* 85 Cal.App.4th at p. 1287.)

C

*Analysis*

Residential Capital urges us to reconsider the analysis in *Little, supra,* 188 Cal.App.3d 1354, or at least to distinguish it, and to find that the foreclosure sale in this case was voidable or unenforceable but not void. Under Residential Capital's theory, the foreclosure sale could be avoided by the trustor because of the failure of the trustee Cal-Western to postpone the sale and the trustor was therefore entitled to retain title to the property. At the same time, Residential Capital, as an innocent party to the voidable foreclosure sale, was entitled to ratify the sale and obtain contract breach damages against the trustee and beneficiary measured by the difference between the amount of the accepted bid and the value of the property. Defendants urge that under *Little,* the foreclosure sale here was void; Residential Capital could therefore not ratify the sales contract and is entitled only to the return of money plus interest. (*Id.* at pp. 1361-1362.)

Both Residential Capital and defendants seek to apply common law contract principles of voidness, voidable, unenforceability, invalidity and illegality to the trust deed nonjudicial foreclosure procedure. Their analyses exhibit the difficulties in this application. Residential Capital, for example, finds the sale avoidable by the trustor, which is not a party to the foreclosure sale, while at the same time finding it can ratify the sale, at least for purposes of monetary damages. Defendants, on the other hand, find the sale void, which if literally true would seem inconsistent with the conclusive presumption of validity set forth in section 2924; can a void contract of sale be revived by the issuance of a trustee's deed containing the prescribed verbiage? Although *Little, supra,* 188 Cal.App.3d 1354, and *Angell, supra,* 73 Cal.App.4th 691, referred to the foreclosure sales as void, neither *Moeller, supra,* 25 Cal.App.4th 822, nor *6 Angels, supra,* 85 Cal.App.4th 1279, referred to the foreclosure sales in the context of common law contract principles.

We are convinced that it is unhelpful to analyze trust deed nonjudicial foreclosure sales issues in the context of common law contract principles.

First, the foreclosure sale affects not only the two parties to the sale (the bidder and the trustee) but also the three parties to the trust deed (the trustor, trustee and beneficiary), It is difficult to apply two-party contract principles to a transaction involving the rights of parties to a trust deed foreclosure auction sale and different parties to the trust deed whose rights are affected by the sale. Second, trust deed nonjudicial foreclosure sales are comprehensively regulated by the detailed statutory scheme set forth in section 2924 et seq., which is not based on common law contract principles. We therefore decline the suggestion of Residential Capital and the defendants to base our decision on common law contract principles of voidness and its corollaries of voidability, enforceability, invalidity and illegality. Rather, we conclude the case should be decided on principles of interpretation of the statutory scheme setting forth the rules of trust deed nonjudicial foreclosure sales.

■ The purposes of the comprehensive statutory scheme regulating nonjudicial foreclosure sales are summarized in *Moeller, supra,* 25 Cal.App.4th 822, as follows: "[T]he purposes of the nonjudicial foreclosure sale statutes are to protect the trustor (debtor) from wrongful loss of the property and to provide a quick, inexpensive and efficient remedy for creditors of defaulting debtors. [Citation.] The debtor is protected by notice requirements, reinstatement and redemption periods and a right to postpone the sale. In addition to the statutory purpose of balancing the rights and interests of the creditor and debtor, the statutory scheme also evidences an intent that a properly conducted sale be a final adjudication of the rights of the creditor and debtor [citations] and the sanctity of title of a bona fide purchaser be protected." (*Id.* at p. 832.) ■ In general, in conducting statutory interpretation of portions of a statutory scheme, we seek to effectuate legislative intent. Statutes are not to be read in isolation, but rather must be construed with related statutes and considered in the context of the statutory framework as a whole. (*Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 505 [108 Cal.Rptr.2d 10].)

■ In *Moeller, supra,* 25 Cal.App.4th at page 830, the court rejected an attempt by the defaulting trustor to obtain through the application of section 3275, which allows relief from forfeiture between the parties to a contract, equitable relief from the foreclosure sale of his property. The court reiterated the rule that nonjudicial foreclosure sales are controlled by a comprehensive statutory framework that is intended to be exhaustive. (§§ 2924-2924k.) This scheme "includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision [i.e., section 3275] into statutory nonjudicial foreclosure proceedings." (*Moeller,* at p. 834.)

Although Residential Capital does not seek to incorporate unrelated statutory provisions into the statutory scheme, it does not consider the statutory scheme as a whole. Its main argument is that there was no notice defect here, and mandatory postponement of the sale by agreement between the beneficiary and the trustor pursuant to section 2924g, subdivision (c)(2) does not create an irregularity in the sale under *Little, supra,* 188 Cal.App.3d 1354. However, we do not read *Little* as so limited. The inquiry is whether, recognizing the purposes of the statutory scheme, there is a substantial defect in the statutory procedure that is prejudicial to the interests of the trustor and claimants. (*Id.* at p. 1362.) It seems inconsistent for Residential Capital to contend that although a postponement of the sale occurred and the trustor was not bound by the sale, a separate conflicting contractual sale obligation nevertheless came into existence on its behalf against the trustee and beneficiary.

The agreement to postpone the sale under section 2924g cannot be disregarded in evaluating whether the sale procedure was substantially defective. Only a properly conducted foreclosure sale, free of substantial defects in procedure, creates rights in the high bidder at the sale. Because the provisions of sections 2924-2924k comprise a well-coordinated statutory scheme, there is no need for an express statement in section 2924g that a violation of its sale postponement provision will insulate the trustor and beneficiary from liability. Defects in the notice requirements of the statutory scheme have been held to be those defects that substantially infringe on the rights of the trustor to protect his encumbered real property from loss by foreclosure. (*Little, supra,* 188 Cal.App.3d 1354; *Angell, supra,* 73 Cal.App.4th 691.) Therefore, if the notice's defect is detected before the trustee's deed is issued, the successful foreclosure sale bidder has not been seriously prejudiced and its remedy is limited to the return of the sale price plus interest. However, if the trustee's deed with the appropriate recitations has been issued to a bona fide purchaser, the purpose of the statutory scheme to provide a prompt and efficient remedy for creditors is implemented by the section 2924 statutory presumption of finality.[3]

The right of the trustor to postpone the foreclosure sale by agreement with the beneficiary is as important to the protection of the trustor's property

---

[3]Section 2924 provides in part: "A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice."

from wrongful foreclosure as are the notice requirements considered in *Little, supra,* 188 Cal.App.3d 1354 and *Angell, supra,* 73 Cal.App.4th 691. (§ 2924g, subd. (c)(2).) The notice requirements ensure a fair sale; the postponement right prevents a sale when there may be no default by the trustor. We see no meaningful distinction in the importance of the two sets of trustor rights. Furthermore, if the noncompliance with the postponement requirements is discovered before the trustee's deed is issued, the successful bidder at the foreclosure sale has not been prejudiced any more than if the trustee's deed has not issued because of discovery of notice defects. Therefore, we conclude the result should be the same in the event of violation of postponement rights as in the event of defects in the notice requirements. The result, although not the rationale, of *Little* and *Angell* should apply in this case.

We do not find persuasive Residential Capital's argument that the statutory scheme provides a related remedy to the trustee for any damages proximately caused to it by a failure to deliver funds because of an error made by a high bidder on property. (§ 2924h, subd. (d).) Although Residential Capital correctly points out that for every legal wrong there is a remedy (§ 3523), the damages covered by section 2924h, subdivision (d) are of a different nature from the alleged damages here. The authorities hold that restitution is an adequate remedy when the foreclosure sale was not held in compliance with the statutory procedural requirements. (*Little, supra,* 188 Cal.App.3d at pp. 1361-1362; *Angell, supra,* 73 Cal.App.4th at pp. 701-702.)

We conclude that, as a matter of law, although Residential Capital's bid was accepted at the nonjudicial foreclosure sale, the discovery of the agreement to postpone the sale by the trustor and beneficiary before the trustee's deed was issued limits Residential Capital's relief to return of its money plus interest. It might be a different case had the trustee's deed been issued to Residential Capital, which might have entitled it to a similar status as a bona fide purchaser would have, entitled to the conclusive presumptions of title under section 2924.[4] However, the trustee's deed was not issued, and Residential Capital has not brought itself within the intent of the statutory scheme that "the sanctity of title of a bona fide purchaser be protected."

---

[4]We need not decide whether the section 2924 conclusive presumption created by a trustee's deed containing the requisite recitals applies to a defect in the statutory foreclosure proceedings other than a defect in giving the required notices. Although the statute refers to notice requirements, the *Moeller* opinion appears to apply the presumption to all significant procedural defects: "The purchaser at a foreclosure sale takes title by a trustee's deed. If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the

(*Moeller, supra*, 25 Cal.App.4th at p. 832.)[5] Our conclusion is consistent with the purposes of the statutory scheme regulating trust deed nonjudicial foreclosure sales. The trustor is protected from unauthorized foreclosure and loss of its property and the sanctity and finality of foreclosure sales is maintained without significant prejudice to the high bidder.

For these reasons, we need not fully address the claim by Residential Capital that it is entitled to a benefit of the bargain measure of damages according to section 3306 (difference between the fair market value of the property at sale time and the bid amount, or $51,500).[6] We note, however, that the problem with this theory is that in light of the mandatory postponement under section 2924g, subdivision (c)(2), there is no entitlement to damages. Rather, the return of the purchase price, plus accrued interest, as received, was the only remedy to which Residential Capital was entitled. (*Little, supra,* 188 Cal.App.3d at pp. 1361-1362.)

II

*Negligence Causes of Action*

In the alternative to its contract theories, Residential Capital argues there were tort duties owed to it, sounding in negligence or negligent misrepresentation. The trial court ruling stated in part, "Because the purchase price plus interest was tendered to Plaintiff, it has sustained no damage and an essential element to all of its causes of action is not present. [¶] . . . And, as to the negligence cause of action the Court concludes Defendants did not owe the duty Plaintiff attempts to impose on them in this case."

---

sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser." (*Moeller, supra,* 25 Cal.App.4th 822, 831.)

[5]Some authorities have questioned whether a speculator who frequently purchases at foreclosure sales, who pays substantially less than the value of the property, should qualify as a bona fide purchaser. (*6 Angels, supra,* 85 Cal.App.4th at p. 1286; *Estate of Yates* (1994) 25 Cal.App.4th 511, 523 [32 Cal.Rptr.2d 53]; 4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:210, p. 642.) We need not decide this point, however, because no trustee's deed was issued to Residential Capital.

[6]Section 3306 provides: "The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach, the expenses properly incurred in preparing to enter upon the land, consequential damages according to proof, and interest."

A

*Negligence*

■ Residential Capital's negligence cause of action is based primarily on the statements in *Baron v. Colonial Mortgage Service Co.* (1980) 111 Cal.App.3d 316, 323-324 [168 Cal.Rptr. 450] (*Baron*), as follows: "Courts have also enunciated a duty in the trustee in the conduct of a sale itself. 'A sale under a power in a mortgage or trust deed must be conducted in strict compliance with the terms of the power. The sale must be made fairly, openly, reasonably, and with due diligence and sound discretion to protect the rights of the mortgagor and others, using all reasonable efforts to secure the best possible or reasonable price.' [Citation.] That duty may thus fairly be said to extend to all participants in the sale, including prospective bidders." Because of the agency alleged between Bank One and Cal-Western, the duty would apply to each.

In *Baron, supra,* 111 Cal.App.3d 316, the unsuccessful bidders were contending that the trustees arbitrarily refused to consider them to be qualified, and abused their discretion in evaluating the form in which their money was tendered. "Since the trustee's sole obligation is to obtain the highest possible price, payable in 'good' money, needed to satisfy the indebtedness owed the beneficiary and recover for the trustor as much equity as possible, discretion ought to be measured, not by absolute terms, but by whether its exercise serves to promote competitive bidding by reliable bidders to secure the best possible price. The exercise of reasonable business prudence on the part of the trustee in acceptance of cash equivalents would protect all parties under the statutory scheme, as the statute now expressly recognizes." (*Id.* at p. 323.)

Residential Capital relies on this authority to argue that the trustee and beneficiary have a duty to third party buyers to exercise ordinary care in verifying the status of pending foreclosure sales before they go to auction. It argues that the technology exists to avoid the type of problem that arose here, including the use of cellular phones in addition to e-mail.

The nature of this duty of a foreclosing trustee is to ensure the sale is fairly conducted, according to proper procedures, to achieve the highest possible price. (*Ostayan v. Serrano Reconveyance Co.* (2000) 77 Cal.App.4th 1411, 1419 [92 Cal.Rptr.2d 577].) This duty runs to both the beneficiary and the trustor. As far as an unsuccessful bidder is concerned, this duty would seem to apply only if there were a valid foreclosure sale in which the unsuccessful bidder was entitled to participate, but was somehow unfairly

prevented from doing so. The instant case is different because the foreclosure sale was subject to mandatory postponement, even though the bidders and the trustee exercising the power of sale did not recognize the postponement at the time of the sale.

In addition to these cases, Residential Capital relies on language in *Shaw v. Union Escrow & Realty Co.* (1921) 53 Cal.App. 66 [200 P. 25], a case interpreting the damages rule of section 3306, finding that bad faith on the part of a seller in breaching a contract to sell real property was required for a damages award under that statute. A refusal to perform a contract without just cause gave rise to damages. (*Shaw, supra,* 53 Cal.App. at p. 69.)[7] There, the court stated, "As we understand the law it is not necessary, . . . to establish bad faith within the meaning of section 3306 of the Civil Code, that the vendor be shown to have refused to go on with the transaction because of some gain which would accrue to him. It is sufficient if he refuses to convey, *where through his own negligence he has put it out of his power to fulfill the obligations of his contract.*" (*Shaw, supra,* 53 Cal.App. at p. 69, italics added.) Residential Capital interprets this language to show there is a negligence cause of action where there are conflicting contractual obligations. However, the court in *Shaw* was interpreting a contract cause of action and did not have any negligence claims before it, so we think Residential Capital's interpretation is not persuasive.

Instead, we look to the overall context of this transaction to determine if negligence-based duties arose. A similar problem was considered in *Diediker v. Peelle Financial Corp.* (1997) 60 Cal.App.4th 288, 294-297 [70 Cal.Rptr.2d 442] (*Diediker*), in which an argument was made that the court should impose a duty on the trustee in a trust deed foreclosure sale, owed to all future purchasers of property and their title insurers, to locate all IRS liens of record and give notice to the IRS prior to conducting a foreclosure sale. It was argued that there should be such a common law duty, because the purchaser at a foreclosure sale might not otherwise know about the lien, and the trustee could more readily obtain such knowledge. The court rejected this approach, stating that "the Supreme Court has said that the Legislature intended to cover the entire subject area of nonjudicial foreclosures by statute and leave nothing for the courts." (*Id.* at p. 295.) The court also found that any subsequent purchasers at the foreclosure sale should not be owed that duty because it was too remote and unforeseeable that they would be affected by the presence or absence of an IRS lien. The court concluded, "In

---

[7]However, as explained in 1 Witkin, Summary of California Law (9th ed. 1987) Contracts, section 844, page 761, section 3306 was amended in 1983 to delete any requirement of bad faith for contract damages recovery.

short, we find no reason to create a new, nonstatutory duty for trustees engaged in the conduct of foreclosure sales as requested by appellants." (*Id.* at p. 297.) In this appeal, we are being asked to do what *Diediker* rejected.

A similar argument was rejected in *Moeller, supra,* 25 Cal.App.4th 822, in which the trustor sought equitable relief from forfeiture under section 3275. The Court of Appeal explained, "The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. [Citation.] It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings." (*Moeller, supra,* at p. 834.)

The only rights for the unsuccessful high bidder at a mandatorily postponed sale are the return of the consideration paid plus interest. (*Little, supra,* 188 Cal.App.3d at pp. 1361-1362.) No negligence cause of action need be recognized here. Otherwise, we would be engaging in judicial legislation by grafting a tort remedy onto a comprehensive statutory scheme in the absence of a compelling justification for doing so. (§§ 2924-2924k.)

## B

### Negligent Misrepresentation

■ The only specific part of the trial court's ruling pertaining to the negligent misrepresentation cause of action was that because Residential Capital had sustained no damage, an essential element to all of its causes of action was not present. Residential Capital argues that the defendants made implied representations through their conduct or silence, to the effect that a valid sale was being conducted, and that it detrimentally relied on these representations and sustained damages. Triable issues of fact assertedly exist based on whether the trustee had a good faith belief in the representations made, and as to what representations were made.

■ " ' "Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit." [Citations.]' [Citations.] If defendant's belief 'is both honest and reasonable, the misrepresentation is innocent and there is no tort liability. [Citations.]' [Citation.] Justifiable reliance on the part of the plaintiff is also 'an essential element of a cause of action for negligent misrepresentation . . . .' [Citation.] [¶] . . .

Parties cannot read something into a neutral statement in order to justify a claim for negligent misrepresentation. The tort requires a 'positive assertion[.]' [Citation.] 'An "implied" assertion or representation is not enough. [Citation.]' " (*Diediker, supra,* 60 Cal.App.4th 288, 297-298, italics omitted.)

In *Byrum v. Brand* (1990) 219 Cal.App.3d 926 [268 Cal.Rptr. 609], this court explored the type of representations that will support this cause of action in a fiduciary context (not alleged to be the instant case). "Sections 1572, subdivision (2) and 1710, subdivision (2) govern the law of negligent misrepresentation where there is no allegation of actual suppression of fact [citation]. Those sections (§§ 1572, subd. (2), 1710, subd. (2)) require positive assertions or simply assertions for the statement of a cause of action for negligent misrepresentation, and we see no reason to depart from these statutory requirements that something more than an omission is required to give rise to recovery on that theory, even as against a fiduciary. As already noted . . . , Witkin has explained that an actual representation is not a required element of a cause of action for breach of fiduciary duty or constructive fraud. However, for a cause of action for negligent misrepresentation, clearly a representation is an essential element. *The alleged representation by omission claimed by Byrum seems to us to be too remote to fit this requirement.*" (*Byrum, supra,* 219 Cal.App.3d at pp. 941-942, italics added and omitted.)

In the real property sales context, these rules were applied in *Wilson v. Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298 [18 Cal.Rptr.2d 779]. There, the reviewing court upheld a grant of nonsuit on a home buyer's negligent misrepresentation cause of action, over an argument that the seller's broker had a duty to discover and disclose material defects to the home buyer of a "fixer upper." (*Id.* at p. 301.) The court analyzed the state of knowledge of the defendant real estate broker and agent for the seller about the condition of the property, as follows: "Finally, asserting that one is not 'aware' of significant 'defects/malfunctions' in a foundation, while a direct reference to a foundation, is still only implied as to its true condition. Indeed, one who claims to be 'aware' of no defects necessarily leaves open the chance that unknown defects do exist. While plaintiffs argue that failure to discover and disclose unknown defects renders a disclosure of known defects an adequate implied 'assertion,' one court has held, in the analogous context of an investment advisor's failure to investigate and disclose investment facts, that the positive-assertion requirement bars relief. (*Byrum v. Brand*[, *supra,*] 219 Cal.App.3d 926, 942 . . . .) Here, as there, '[t]he alleged representation by omission . . . seems to us to be too remote to fit this requirement. . . .' (*Ibid.*)" (*Wilson, supra,* 15 Cal.App.4th at p. 306, italics omitted.)

Here too, Residential Capital argues that the trustee's failure to discover and disclose information unknown to it about the postponement of the sale renders its representations about the sale's timing to be an adequate "implied assertion" that would support a negligent misrepresentation cause of action. It is similarly arguing that the beneficiary negligently misrepresented the sale was able to go forward, by not correcting its instructions to the trustee about the sale date in a more effective manner. However, these alleged misrepresentations are no more than alleged representations by omission, without fraudulent intent, and the representations were correct when formulated. The failure to correct them based on the postponement agreement was unfortunate, but we do not believe the comprehensive scheme of nonjudicial foreclosure legislation will permit the imposition of a misrepresentation-based tort duty under these factual circumstances. (See *Moeller, supra,* 25 Cal.App.4th at p. 834.)

As an alternative position, Residential Capital argues there may be triable issues of fact as to a possible fraudulent inducement cause of action. However, only negligence-type facts have been pleaded, and at the summary judgment stage and an appeal thereof, the plaintiff is not entitled to assert new causes of action without obtaining leave to amend. "The burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability as alleged in the complaint. A 'moving party need not ". . . refute liability on some theoretical possibility not included in the pleadings." [Citation.]' [Citation.] ' "[A] motion for summary judgment must be directed to the issues raised by the pleadings. The [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings." [Citation.]' " (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342-1343 [67 Cal.Rptr.2d 726], italics omitted.) Accordingly, it was appropriate to grant summary judgment on all causes of action.

DISPOSITION

The judgment is affirmed.

McDonald, J., and McConnell, J., concurred.