[No. B128163. Second Dist., Div. Four. Jan. 2, 2001.]

6 ANGELS, INC., Plaintiff and Respondent, v.
STUART-WRIGHT MORTGAGE, INC., et al., Defendants and
Appellants.

## COUNSEL

Burnett & Matthews, Michael W. Burnett and Arturo E. Matthews, Jr., for Defendants and Appellants.

Law Offices of Jody D. Angel and Jody D. Angel for Plaintiff and Respondent.

---

## OPINION

**CURRY, J.**—After respondent 6 Angels, Inc., (6 Angels) successfully bid $10,000.01 on a piece of real property offered for $10,000 at a trustee's sale, appellant Dovenmuehle Mortgage, Inc., (DMI) refused to transfer the deed to 6 Angels, contending that the property should have been offered at $100,000. The trial court granted summary adjudication on 6 Angels's claim for quiet title and judgment was subsequently entered in favor of 6 Angels and against appellants DMI, Stuart-Wright Mortgage, Inc. (SWM) and MTDS, Inc., doing business under the name of Meridian Trust Deed Service (MTDS). We affirm.

### STATEMENT OF FACTS

Prior to March 21, 1997, SWM was the beneficiary under a deed of trust encumbering real property owned by Marvin Salazar and Maria Carmen Ruiz. DMI serviced the loan on behalf of SWM. Mortgage Default Service was the substituted trustee under the deed of trust.[1]

On February 25, 1997, a notice of trustee's sale regarding this property was recorded. The notice listed an indebtedness of $144,656.17, and stated that a trustee's sale was scheduled for March 21, 1997. The day before the trustee's sale, DMI sent a letter to Mortgage Default Service setting an opening bid of $10,000.

6 Angels attended the sale after receiving a copy of the notice of sale. The auctioneer at the sale made an opening bid of $10,000 on behalf of SWM, and 6 Angels tendered a bid for $10,000.01, which was uncontested by any other bidders. Shortly thereafter, DMI learned about 6 Angels's bid and instructed Mortgage Default Service to return the funds tendered by 6 Angels and not to issue a trustee's deed. Mortgage Default Service followed these instructions. MTDS bought the property for $100,000.01 at a second trustee's sale on April 18, 1997.

### STATEMENT OF THE CASE

6 Angels commenced the underlying action on April 16, 1997. On or about May 26, 1998, 6 Angels filed a motion for summary adjudication on

---

[1]Mortgage Default Service is not a party to this appeal.

its claim for quiet title in its third amended complaint. On July 10, 1998, the trial court granted the motion, and 6 Angels subsequently dismissed the remaining claims in the third amended complaint. Judgment was entered on October 20, 1998.

## DISCUSSION

Appellants contend that the trial court erred in granting summary adjudication on 6 Angels's claim for quiet title. We disagree.

### A. *Standard of Review*

"A summary adjudication motion is subject to the same rules and procedures as a summary judgment motion. Both are reviewed de novo. [Citations.]" (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819 [44 Cal.Rptr.2d 56].)

"Summary adjudication is properly granted when the evidence in support of the moving party establishes that there is no issue of fact to be tried as to a particular cause of action, affirmative defense, claim for damages or issue of duty. [Citations.] The aim of the procedure is to discover whether the parties possess evidence requiring the weighing procedures of a trial. [Citation.] . . . For a plaintiff or cross-complainant to prevail, such party must show there is no material factual dispute with respect to one or more causes of action. [Citation.] The trial court must decide if a triable issue of fact exists. If none does, and the sole remaining issue is one of law, it is the duty of the trial court to determine the issue of law. [Citation.]" (*Federal Deposit Ins. Corp. v. Superior Court* (1997) 54 Cal.App.4th 337, 344-345 [62 Cal.Rptr.2d 713].)

### B. *Setting Aside the Foreclosure Sale*

The primary issue presented is whether the trial court properly denied appellants relief from the foreclosure sale.

#### 1. *Challenges to Foreclosure Sales*

As the court explained in *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777], foreclosure sales are governed by a "comprehensive" statutory scheme. This scheme, which is found in Civil Code sections

2924 through 2924k,[2] evidences a legislative intent that a sale which is properly conducted "constitutes a final adjudication of the rights of the borrower and lender." (*Moeller v. Lien, supra,* 25 Cal.App.4th at p. 831.)

"As a general rule, there is a common law *rebuttable* presumption that a foreclosure sale has been conducted regularly and fairly." (4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:211, p. 647, fn. omitted; *Brown v. Busch* (1957) 152 Cal.App.2d 200, 204 [313 P.2d 19].) Accordingly, "[a] successful challenge to the sale requires evidence of a failure to comply with the procedural requirements for the foreclosure sale that caused prejudice to the person attacking the sale." (4 Miller & Starr, *supra,* § 10:210, at p. 640.) Whether there is sufficient evidence to overcome this presumption is generally a question of fact. (*Wolfe v. Lipsy* (1985) 163 Cal.App.3d 633, 639 [209 Cal.Rptr. 801], disapproved on another ground in *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 36 [283 Cal.Rptr. 584, 812 P.2d 931].) Nonetheless, the presumption must prevail when the record lacks substantial evidence of a prejudicial procedural irregularity. (*Stevens v. Plumas Eureka Annex Min. Co.* (1935) 2 Cal.2d 493, 497 [41 P.2d 927].)

### 2. *Absence of Procedural Error*

■ On appeal, the parties do not dispute that DMI intended to set the opening bid at $100,000, but through a clerical error it mistakenly instructed Mortgage Default Service to open with a bid of $10,000. However, California courts have long held that mere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale. (*Crofoot v. Tarman* (1957) 147 Cal.App.2d 443, 446 [305 P.2d 56]; *Sargent v. Shumaker* (1924) 193 Cal. 122, 129-130 [223 P. 464].)

An instructive application of this principle is found in *Crofoot v. Tarman, supra,* 147 Cal.App.2d 443. In *Crofoot,* the owners of some real property

---

[2]The scheme can be summarized as follows: "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. (Civ. Code, § 2924 . . . .) The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. (Civ. Code, § 2924 . . . .) After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. (Civ. Code, § 2924, subd. (b) . . . .) After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale. (Civ. Code, § 2924f . . . .) The trustee may postpone the sale at any time before the sale is completed. (Civ. Code, § 2924g, subd. (c)(1) . . . .) If the sale is postponed, the requisite notices must be given. (Civ. Code, § 2924g, subd. (d).) The conduct of the sale, including any postponements, is governed by Civil Code section 2924g. [Citation.] The property must be sold at public auction to the highest bidder. (Civ. Code, § 2924g, subd. (a) . . . .)" (*Moeller v. Lien, supra,* 25 Cal.App.4th at p. 830.)

encumbered it with a trust deed to secure a note for a corporation, and a default occurred. (*Id.* at p. 444.) The owners entered into a contract to sell the property for approximately $78,000 to Tarman, who also bought the note secured by the property and asked for a postponement of the impending foreclosure sale. (*Id.* at pp. 444-445.) When the corporation tried to determine the date of the postponed sale from Tarman's attorney, the attorney's secretary innocently and inadvertently provided an incorrect date, and neither the owners nor the corporation appeared at the foreclosure sale. (*Id.* at pp. 445-447.) Tarman bought the property for $10,000 at this sale and did not make any payment under his prior contract to purchase the property. (*Id.* at pp. 445-446.)

The owners then sought relief from the foreclosure sale. (*Crofoot v. Tarman, supra,* 147 Cal.App.2d at p. 446.) At trial, Tarman testified that he believed the property was worth between $40,000 and $50,000 on the date of the foreclosure sale, and the trial court concluded that its value was " 'not in excess of $50,000.' " (*Ibid.*) On appeal, the court in *Crofoot* noted that Tarman obtained the property for about $20,000 (including sums paid to discharge liens). (*Ibid.*) Nonetheless, it concluded that the owners were not entitled to relief from the sale, despite the inadequacy of the sale price, because there were no procedural irregularities in the sale, and the secretary's mistake was "dehors[3] the sale proceedings." (*Id.* at p. 447; see also *Lancaster Security Inv. Corp. v. Kessler* (1958) 159 Cal.App.2d 649, 652-656 [324 P.2d 634] [even though property valued at between $50,000 and $60,000 was sold at a nonjudicial foreclosure sale for $3,000, party who bought property from original trustor prior to sale is not entitled to set aside sale because all statutory notice requirements for sale were satisfied].)

Here, the only potential procedural irregularity identified by appellants is the clerical error that DMI allegedly made when instructing Mortgage Default Service on the opening bid. However, this error, which was wholly under DMI's control and arose solely from DMI's own negligence, falls outside the procedural requirements for foreclosure sales described in the statutory scheme, and, like the secretary's error in *Crofoot*, is "dehors the sale proceedings." (*Crofoot v. Tarman, supra,* 147 Cal.App.2d at p. 447.) Because there is no procedural error here independent of the inadequacy of price, we conclude that summary adjudication was properly granted.

Appellants contend otherwise on several grounds. For the reasons explained below, we reject these contentions.

---

[3]The term "dehors" means "[o]ut of; without; beyond; foreign to; unconnected with." (Black's Law Dict. (6th ed. 1990) p. 424, col. 2.)

### 3. *Bona Fide Purchaser*

Appellants contend that there is a triable issue as to whether 6 Angels was a bona fide purchaser, and thus summary adjudication was improper. We disagree.

It is undisputed that 6 Angels is in the business of buying properties at foreclosure sales, and thus there is evidence that it is not a bona fide purchaser. (*Estate of Yates* (1994) 25 Cal.App.4th 511, 523 [32 Cal.Rptr.2d 53].) Nonetheless, as we explain below, 6 Angeles's status as a bona fide purchaser is immaterial here.

In limited circumstances, a foreclosure sale can be successfully challenged only if the buyer is not a bona fide purchaser. (4 Miller & Starr, Cal. Real Estate, *supra*, § 10:210, at p. 639.) Aside from the common law presumption of validity discussed above (see pt. B.1, *ante*), Civil Code section 2924 contains a statutory presumption "aris[ing] from the recital in the trustee's deed that all statutory requirements for notice of default and sale have been satisfied. This presumption is prima facie evidence of compliance and conclusive evidence of compliance in favor of a bona fide purchaser or encumbrancer." (4 Miller & Starr, *supra*, § 10:211, at p. 648, italics & fn. omitted; see also *Wolfe v. Lipsy, supra*, 163 Cal.App.3d at pp. 639-640.) Thus, once a deed reciting that all legal requirements have been satisfied has been transferred to a buyer at a foreclosure sale, the sale can be successfully attacked on the grounds of procedural irregularity *only if* the buyer is not a bona fide purchaser. (*Moeller v. Lien, supra*, 25 Cal.App.4th at p. 831; 4 Miller & Starr, *supra*, § 10:211, at p. 648.)

However, it is undisputed here that no deed was transferred to 6 Angels. When the deed has not been transferred, the sale may be successfully challenged, *regardless* of whether the buyer is a bona fide purchaser, provided that there is a procedural irregularity. (*Moeller v. Lien, supra*, 25 Cal.App.4th at pp. 831-832; *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1358-1362 [233 Cal.Rptr. 923]; 4 Miller & Starr, Cal. Real Estate, *supra*, § 10:211, at p. 648.) As we have explained, nothing suggests that there was any procedural defect in the sale. Accordingly, under the facts of the present situation, the existence of factual disputes about 6 Angels's status as a bona fide purchaser is irrelevant to whether summary adjudication was properly granted.

Appellants disagree, citing *Estate of Yates, supra*, 25 Cal.App.4th 511. However, *Yates* is factually distinguishable. The court in *Yates* held the gross inadequacy in price was sufficient to put a skilled and experienced purchaser

on notice of the actual procedural defect, namely, the trustee's failure to send a mandatory notice. (*Id.* at pp. 520-523.) Unlike *Yates,* there was no procedural irregularity in the sale at issue here.

### 4. *Alternative Remedial Theories*

Appellants also contend the sale should be set aside on grounds of public policy, and on the basis of theories of unilateral mistake, unjust enrichment, and lack of consideration. We are not persuaded.

The public policy underlying the comprehensive framework governing foreclosure sales is a concern for swift, efficient, and final sales. (*Moeller v. Lien, supra,* 25 Cal.App.4th at pp. 830, 832.) In our view, which we elaborate below, granting relief under the circumstances present here would frustrate, rather than promote, this policy, by adding uncertainty to the finality of foreclosure sales. ■ Regarding appellants' theories of relief, we recognize that "[i]t is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties." (*Bank of America etc. Assn. v. Reidy* (1940) 15 Cal.2d 243, 248 [101 P.2d 77].) Nonetheless, the alternative theories fail in this context.

■ Rescission of a contract on the basis of a unilateral mistake is unavailable to a party who assumed the risk of the mistake in entering into the contract. (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1096-1099 [56 Cal.Rptr.2d 386]; Rest.2d Contracts, § 153.) In some circumstances, the risk of a mistake may be allocated to a party by a court "on the ground that it is reasonable in the circumstances to do so." (Rest.2d Contracts, § 154, subd. (c); see *Schultz v. County of Contra Costa* (1984) 157 Cal.App.3d 242, 249 & fn. 1 [203 Cal.Rptr. 760].) In *Sargent v. Shumaker, supra,* 193 Cal. at page 132, our Supreme Court indicated that a beneficiary assumes the risk of the sort of error at issue here, stating that " '[i]f the inadequacy [of price] *can be connected with or shown to result from* any mistake, accident, surprise, misconduct, fraud or irregularity, the sale will generally be vacated, *unless the complainant was himself in fault,* or the rights of innocent third parties have become dependant upon the sale.' " (Quoting Freeman on Executions (1900) § 309.)

The *Sargent* court's discussion in connection with these remarks cites with approval *Rauer v. Hertwick* (1917) 175 Cal. 278 [165 P. 946]. In *Rauer,* a judgment creditor's land was sold at a meager price at an execution sale to

pay the judgment, and the judgment creditor sought to set aside the sale, contending that he had not received notice of the sale. (*Id.* at p. 279.) Observing that all statutorily mandated notices of the sale were given and that the judgment creditor knew of the judgment, the court in *Rauer* declined to set aside the sale, despite the inadequacy of the price, reasoning that his loss could "more properly be attributed to his neglect of his own interests than to any unfairness" by anyone else. (*Id.* at pp. 281-283.)

■ We believe that *Sargent* and *Rauer* are dispositive here. The alleged error in price was within appellants' discretion and control, and they were solely responsible for it. Unless beneficiaries assume the risk of such errors, a low opening bid at a foreclosure sale will invariably trigger suspicion about the sale's finality, deterring buyers and impairing the efficacy of foreclosure sales.

For similar reasons, principles of unjust enrichment do not provide a basis for relief. ■ As the court explained in *First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1663 [15 Cal.Rptr.2d 173], "[d]etermining whether it is unjust for a person to retain a benefit may involve policy considerations. For example, if a person receives a benefit because of another's mistake, policy may dictate that the person making the mistake assume the risk of the error. The desirability of allowing a party to retain the benefit of his or her bargain may preclude the injured party from receiving restitution." ■ That is the case here.

Finally, $10,000.01 is ample consideration for the sale. (See *Poggetto v. Bowen* (1936) 18 Cal.App.2d 173, 175 [63 P.2d 857] ["There being some consideration, the law will not attempt to measure the amount thereof."]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 210, pp. 218-219.)

### DISPOSITION

The judgment is affirmed.

Vogel (C. S.), P. J., and Epstein, J., concurred.