[No. C059875. Third Dist. Nov. 24, 2009.]

MILLENNIUM ROCK MORTGAGE, INC., Plaintiff and Respondent, v. T.D. SERVICE COMPANY, Defendant and Appellant.

**COUNSEL**

The Dreyfuss Firm and Lawrence J. Dreyfuss for Defendant and Appellant.

Wagner Kirkman Blaine Klomparens & Youmans and Thomas B. Sheridan for Plaintiff and Respondent.

## OPINION

**BUTZ, J.**—Defendant and appellant T.D. Service Company (TDS) appeals from an order granting a preliminary injunction that enjoined it from reconducting a nonjudicial foreclosure sale for certain real property in Sacramento. The auctioneer at the foreclosure sale used an auction script for a different foreclosure, but erroneously called out the street address of the subject property. As a result, he opened the bidding with a credit bid that was only a fraction of what was actually owed on the subject property. Plaintiff and respondent Millennium Rock Mortgage, Inc. (Millennium), bid slightly more

than the opening credit bid and was declared the successful bidder. Later the same day, TDS discovered the error and sought to conduct the sale again. Millennium sued to quiet title to the property.

■ The trial court issued a preliminary injunction barring TDS from conducting a new foreclosure sale. The issue on appeal is whether the auctioneer's mistake, discovered after the close of bidding but prior to the issuance of a trustee's deed, constituted an "irregularity" sufficient to give the trustee the right to rescind the sale. The trial court believed it did not. We disagree and shall reverse the order.

## FACTUAL BACKGROUND

The relevant facts are not in dispute. JP Morgan Chase Bank (JP Morgan) was the beneficiary under a deed of trust securing the subject property located on Arcola Avenue in Sacramento. TDS was retained by JP Morgan as trustee to conduct a nonjudicial foreclosure sale on the property. Prior to the sale, JP Morgan instructed TDS to submit a credit bid on the property of $377,710.57, plus foreclosure fees and costs. After adding on fees and costs, TDS submitted a credit bid price of $382,544.46 to Trustee's Assistance Corporation, which served as the auctioneer for the foreclosure sale.

The sale was held on June 19, 2008. On the same day, the auctioneer for Trustee's Assistance Corporation was also conducting a foreclosure sale for another property located on 13th Avenue in Sacramento. The beneficiary's credit bid for that property was $51,447.50.

As was his custom and practice, the auctioneer used a script to conduct the sale. Every script includes a trustee sale (or TS) number, a legal description of the property, and the property address. The script for the 13th Avenue property contained a clerical error—although it had the correct TS number, legal description, and credit bid amount, the Arcola Avenue address was inserted, rather than the 13th Avenue address.

In announcing the sale for the 13th Avenue property, the auctioneer opened the bidding with the beneficiary's credit bid of $51,447.50. However, due to the mistake in the script, he called out the Arcola Avenue address instead of the 13th Avenue address. Millennium submitted a bid for $51,500. No other bids having been submitted, the auctioneer closed the bidding and announced the property "sold." Millennium promptly tendered a cashier's

check for more than the amount of the bid and demanded a receipt. The auctioneer gave Millennium a receipt for $51,500 containing the TS number for the Arcola Avenue property.[1]

Later the same day, the auctioneer discovered his mistake. He telephoned Millennium's representative and advised him that the sale was invalid due to a procedural error. The representative replied that Millennium would commence legal action. TDS returned the bid funds to Millennium and announced its intention to hold a new trustee's sale.

## PROCEDURAL BACKGROUND

Millennium filed a complaint against TDS and others for failure to issue a trustee's deed in violation of Civil Code section 2924h,[2] and to quiet title to the Arcola Avenue property. The complaint sought an order compelling TDS to issue a trustee's deed and a judgment quieting Millennium's title to the Arcola Avenue property.

Millennium then filed an order to show cause regarding preliminary injunction, seeking to restrain TDS from holding a new sale for the Arcola Avenue property. After a hearing, the trial court granted the injunction. The court ruled that the error by the auctioneer was not an irregularity sufficient to invalidate the sale. TDS timely appealed from the order granting the preliminary injunction.

## DISCUSSION

### I. Principles of Review

■ In determining whether to issue a preliminary injunction, the trial court considers two related factors: (1) the likelihood that the plaintiff will prevail on the merits of its case at trial, and (2) the interim harm that the plaintiff is likely to sustain if the injunction is denied as compared to the harm that the defendant is likely to suffer if the court grants a preliminary injunction. (*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1402 [74 Cal.Rptr.2d 712].) ■ Normally, the determination of whether to grant a preliminary injunction generally rests in the sound discretion of the trial court. (*Ibid.*) However, when review of a preliminary injunction involves purely a question of law or statutory interpretation, the

---

[1] In writing the receipt, the auctioneer realized he had left the script for the property in the car. Thus, the TS number he wrote on the receipt was based on information supplied by Millennium.

[2] Undesignated statutory references are to the Civil Code.

standard of review is de novo. (*California Assn. of Dispensing Opticians v. Pearle Vision Center, Inc.* (1983) 143 Cal.App.3d 419, 426 [191 Cal.Rptr. 762]; see also *Environmental Coalition of Orange County, Inc. v. AVCO Community Developers, Inc.* (1974) 40 Cal.App.3d 513, 521 [115 Cal.Rptr. 59] [where no issue of fact is presented, appellate court determines whether the granting of the preliminary injunction was error as a matter of law].)

## II. Applicable Law Regarding Foreclosure Sales

■ Sections 2924 through 2924k "provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777] (*Moeller*).)

■ The sale is deemed complete, for most purposes, when the auctioneer accepts the final bid, even though the trustee's deed is not given to the purchaser until a subsequent time. (4 Miller & Starr, Cal. Real Estate (3d ed. 2000) Deeds of Trust, § 10:206, p. 660.) "The purchaser at a foreclosure sale takes title by a trustee's deed. If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser." (*Moeller, supra*, 25 Cal.App.4th at p. 831.)

However, the presumption does not arise until there is a delivery of the deed. As stated in Miller and Starr, "[p]rior to the delivery of the trustee's deed, there are no conclusive presumptions that the sale is valid. A sale may be challenged where there is an irregularity, unfairness, or fraud in the proceedings, and if facts are discovered by the trustee that allow[] an attack on the validity of the sale, the trustee has the authority to rescind the sale and on the same basis return any funds received to the purchaser, plus interest, and process another foreclosure." (4 Miller & Starr, Cal. Real Estate, *supra*, Deeds of Trust, § 10:206, p. 660.)

■ " 'The power of sale under a deed of trust will be strictly construed, and in its execution the trustee must act in good faith and strictly follow the requirements of the deed with respect to the manner of sale. The sale will be scrutinized by courts with great care and will not be sustained unless conducted with all fairness, regularity and scrupulous integrity.' " (*Pierson v.*

*Fischer* (1955) 131 Cal.App.2d 208, 214 [280 P.2d 491].) " 'While mere inadequacy of price, standing alone, will not justify setting aside a trustee's sale, *gross inadequacy of price coupled with even slight unfairness or irregularity is a sufficient basis for setting the sale aside.*' " (*Bank of Seoul & Trust Co. v. Marcione* (1988) 198 Cal.App.3d 113, 119 [244 Cal.Rptr. 1], italics added, quoting *Whitman v. Transtate Title Co.* (1985) 165 Cal.App.3d 312, 323 [211 Cal.Rptr. 582]; see *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1361 [233 Cal.Rptr. 923] [after sale but prior to deed delivery, trustee discovered defect in giving notice; sale held voidable by the trustee]; *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 702 [86 Cal.Rptr.2d 657] [material mistake regarding the reinstatement amount discovered after acceptance of bid but prior to delivery of deed justified trustee's refusal to complete the transaction].)

There is no dispute that Millennium's accepted bid of $51,500 constituted only one-seventh of the opening credit bid that should have been announced for the Arcola Avenue property. Thus, gross inadequacy of the price has been established. The question remains whether there was an irregularity in the sale.

### III. The Auctioneer's Error Constituted an Irregularity Sufficient to Void the Sale

Millennium contends and the trial court found that this case was controlled by *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279 [102 Cal.Rptr.2d 711] (*6 Angels*). There, the beneficiary's servicing agent miscalculated the amount owing on the subject property and instructed the trustee to set the opening bid at $10,000 (rather than $100,000). The trustee opened the bidding at $10,000 and 6 Angels bid $10,000.01, which was accepted as the high bid. After learning of its mistake, the servicing agent instructed the trustee to return the funds to 6 Angels and to refrain from issuing a trustee's deed. (*Id.* at p. 1282.) The trial court quieted title in favor of 6 Angels, and the Court of Appeal affirmed. (*Id.* at p. 1283.)

The appellate court in *6 Angels* held that the mistake, which was wholly under the control of the beneficiary's agent and the result of its own negligence, fell outside the procedural requirements for foreclosure sales. Because mere inadequacy of the purchase price is not a sufficient ground to set aside a foreclosure sale absent some procedural irregularity that contributed thereto, the court held summary adjudication was properly granted in favor of the purchaser. (*6 Angels, supra,* 85 Cal.App.4th at pp. 1284–1285.)

The agent's mistake in *6 Angels* was indisputably " 'dehors the sale proceedings.' " (*6 Angels, supra,* 85 Cal.App.4th at p. 1285, fn. omitted,

quoting *Crofoot v. Tarman* (1957) 147 Cal.App.2d 443, 447 [305 P.2d 56].) The beneficiary's negligent miscalculation of the amount of its credit bid was totally extrinsic to the proper conduct of the sale itself. However, as we shall demonstrate, the mistake by the auctioneer in this case was of a different variety.

The parties characterize the auctioneer's mistake as simply announcing the wrong opening bid for the Arcola Avenue property. But that description grossly oversimplifies the nature of the error, which was more nuanced and multifaceted.

According to his uncontradicted declaration, the auctioneer conducted the auction sale for *the 13th Avenue property* by using a script that mistakenly listed the Arcola Avenue property address. Consequently, all of the information he announced was accurate, including the trustee sale number, opening bid and legal description, but the Arcola Avenue property address was called out instead of the correct address.

Thus, there was inherent inconsistency in the auctioneer's description of the property being offered for sale. The auctioneer called out the legal description and credit bid applicable to one property, while announcing the street address of a different property. This created a fatal ambiguity in determining which property was being auctioned.[3]

Due to the contradictory descriptions of the property, the auctioneer's mistake went to the heart of the sale. Moreover, if the sale is allowed to stand, it will deprive a blameless beneficiary of its entitlement to the full amount of its credit bid and result in a windfall to a purchaser which acquired the property for only one-seventh of the amount that should have been set as the opening bid had the sale been conducted properly.[4] Since irregularity, gross inadequacy of the price, and unfairness were all abundantly present, the sale was voidable at the option of the trustee. (4 Miller & Starr, Cal. Real

---

[3] Although, in practice, bidders commonly rely on the street address, the legal description of the property is hardly a trivial matter when it comes to foreclosure sales. A notice of sale under a deed of trust must include the street address *and* a description by county assessor parcel number. (§ 2924f, subd. (b)(1).) Moreover, if the notice gives the legal description or assessor's parcel number of the property, the fact that the street address is erroneous or omitted does not affect the validity of the sale. (*Ibid.*) Thus, in the eyes of the Legislature, where there is a discrepancy between the legal description and the street address of the property, the *legal description* takes precedence. By parity of reasoning, it could be argued that Millennium was the successful bidder on the *13th Avenue property*, but we need not go that far. At the least, there was a fundamental uncertainty as to which property the auctioneer sold and Millennium bought.

[4] Section 2924h, subdivision (b) grants to the beneficiary the right to enter a credit bid for "the total amount due the beneficiary including the trustee's fees and expenses." Prior to the sale, JP Morgan instructed the trustee to enter such a credit bid for the Arcola Avenue property.

Estate, *supra*, Deeds of Trust, § 10:206, p. 660.) The trial court erred in reaching the opposite conclusion.

Because this case reaches us on a limited factual record, it would be inappropriate to conclude that TDS is entitled to judgment in the underlying action as a matter of law. However, based on the foregoing analysis, we can safely say there is no reasonable likelihood that Millennium will prevail at a trial on the merits.

■ Although, on appeal from an order granting a preliminary injunction, the question is normally whether *both* irreparable harm and the likelihood of prevailing on the merits are established, "if . . . the party that sought the preliminary injunction . . . has *no* likelihood of prevailing on the merits at trial, then the trial court committed an error of law and we must reverse the order granting the preliminary injunction." (*Pro-Family Advocates v. Gomez* (1996) 46 Cal.App.4th 1674, 1681 [54 Cal.Rptr.2d 600], italics added.) That is the case here.

### DISPOSITION

The order granting the preliminary injunction is reversed with directions to enter a new order denying the injunction. Appellant TDS is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (3).)

Sims, Acting P. J., and Hull, J., concurred.

A petition for a rehearing was denied December 22, 2009, and the opinion was modified to read as printed above.