Filed 3/5/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MATTHEW MATSON et al., | D074442 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2017-00008676-CU-OR-CTL) |
| S.B.S. TRUST DEED NETWORK et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge. Affirmed.

Scali Rasmussen; Halbert B. Rasmussen, Jeffrey W. Erdman and Madeleine K. Lee, for Plaintiffs and Appellants.

Mulvaney Barry Beatty Linn & Mayers; Everett G. Barry and Christopher B. Ghio for Defendants and Respondents.

Plaintiffs Matthew Matson and Matson SDRE Group, LLC (collectively plaintiffs) purchased a deed of trust at a nonjudicial foreclosure sale. S.B.S. Trust Deed Network (SBS) was the trustee and Bank of Southern California, N.A. (BSC) (referred to collectively as defendants) was the beneficiary of the deed of trust. Matson, relying on a

software application called PropertyRadar, believed that the deed of trust was in first position on the property. He purchased the deed of trust for $502,000 at the foreclosure auction, then learned that the lien was in second position, with a much lower fair market value than the price paid.

Plaintiffs filed a first amended complaint against defendants for rescission of the sale and declaratory relief, relying on Matson's unilateral mistake of fact and the unconscionable price he paid for the deed of trust. The parties filed cross-motions for summary judgment. The court granted summary judgment for defendants. Plaintiffs have appealed. We affirm the judgment.

BACKGROUND

*Undisputed Facts*

The deed of trust that is the subject of this lawsuit was recorded in 2007, securing a Small Business Administration loan in the original amount of $475,000. It was in second place, as a first deed of trust had been recorded in 2004 and assigned to Bank of America in 2016.

SBS, the trustee, recorded a notice of default and election to sell on June 10, 2016. BSC, the beneficiary, notified SBS that a total of $414,510.62 was due on the note and deed of trust. BSC authorized a flat opening bid of $71,000 on its behalf. A "flat bid" means that the beneficiary did not authorize any increases in its bid. SBS recorded a notice of sale indicating a sale date of February 1, 2017, later continued to March 1, 2017. The notice of sale stated, "The sale will be made, but without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the

2

remaining principal sum of the note(s) secured by the Deed of Trust . . . ." It also gave notice to bidders that they were bidding on a lien, which might be a junior lien. The notice encouraged bidders to investigate the lien through the county recorder's office or a title insurance company.

In January 2017, Matson learned about the property and potential foreclosure from PropertyRadar. The PropertyRadar user agreement stated that, "You should not rely on these Sites and the information and resources contained on these Sites as a replacement or substitute for any professional, financial, legal or other advice or counsel."[1]

Matson did not follow up with any further investigation on the deed of trust until the morning of the sale, March 1, 2017, when he saw notice of the sale on PropertyRadar again. PropertyRadar identified the loan as being in position "1." Based on his review of the information on PropertyRadar, Matson believed that the loan being foreclosed was a refinance of the original purchase loan, and therefore that it was in first position to the title. Defendants disputed this, pointing out that the PropertyRadar profile also showed the 2004 deed of trust securing the original purchase loan by Countrywide Home Loans and its 2016 assignment of the deed of trust to Bank of America. We accept both Matson's statement of his belief and defendants' response that the profile contained sufficient information to ascertain that the 2004 loan remained in first position.

---

[1] Plaintiffs objected to consideration of PropertyRadar's user agreement. The trial court did not rule on the objections. Counsel for defendants repeated these terms of the user agreement at the summary judgment motion hearing. Plaintiffs did not object.

Matson obtained a 94-page profile on the property from a title company about an hour before the sale. Matson did not read the full property profile. He reviewed only the notice of sale and verified that the amount of the loan on the about-to-be foreclosed deed of trust was consistent with the information listed on PropertyRadar. Matson called a telephone number that he believed to be SBS, but it was actually a separate company, Superior Default Services (SDS). SBS had hired SDS to conduct the foreclosure sale. Matson asked an SDS representative if "the first had cleared for sale," and the representative responded, "Yes, it's cleared for sale." Matson never asked, and the representative never confirmed whether the deed being sold at auction was a first-priority lien. Matson went to the foreclosure sale with cashier's checks totaling $505,000. There were two other bidders at the sale, successively raising their bids from BSC's opening bid of $71,000 until plaintiffs' bid of $502,000 was accepted as the winning bid. A BSC representative was surprised by the price paid at the auction because she knew there was limited equity available in the property.

Matson tendered his cashier's checks, and received and executed a receipt of funds. A disclaimer on the receipt of funds stated, "Buyer and Buyer's Agent agree that neither the Trustee nor its Agents make any express or implied warranties with respect to the real property being purchased. . . . Buyer and Buyer's Agent acknowledge that it has not relied upon any representation by the Trustee or its Agent. Buyer and Buyer's agent agree that the real property is being sold on an "AS IS" basis. Buyer and Buyer's Agent agrees [*sic*] that all funds received by Trustee or its Agents are non-refundable for any reason." Plaintiffs contend that the receipt of funds does not contain any disclaimers

4

about the title of the property. Matson thought the disclaimers applied only to the physical condition of the property.

Later that evening, Matson contacted a real estate agent who had an active listing on the property. As a result of the contact, Matson learned that the deed of trust he purchased might be in second position, not first. Matson tried to stop payment on the cashier's checks the next day. He signed declarations under penalty of perjury stating that the cashier's checks had been stolen. Nonetheless, the bank paid all three cashier's checks.

Matson also sent a letter to defendants stating his belief that he had been defrauded and did not wish to purchase the deed of trust. He sent a formal notice of rescission on March 9. When the trustee mailed the trustee's deed upon sale to Matson on March 10, Matson returned it with a notice of rejection. The trustee however, recorded the deed and a preliminary change of ownership. The SBS employee who recorded the deed had never before recorded a deed over a buyer's objection, but the SBS employee most qualified to testify about normal practice and procedure said that SBS had recorded trustee's deeds and preliminary change of ownership forms numerous times.

*Ruling at Trial*

The trial court found no basis for rescission because plaintiffs could not show irregularity, unfairness or fraud in the nonjudicial foreclosure notice and sale process itself. Plaintiffs' mistakes were based on reliance on the PropertyRadar software and calls to SDS, mistakenly thought to be SBS. Moreover, plaintiffs had a property report from a title company, but failed to read the entire document. None of these information

5

sources was part of the sales process. The court further stated, at the hearing on the summary judgment motions, that (1) Matson made a mistake in failing to adequately investigate before engaging in the foreclosure sale, which was known to be a risky enterprise; (2) Matson had a property report that contained information on all the deeds of trust on the property but did not fully read it; and (3) Matson took the risk of engaging in a sale without fully investigating the terms of the sale or failing to take the time to understand them.

The court granted summary judgment for defendants and dismissed the complaint with prejudice. Plaintiffs then filed this appeal.

DISCUSSION

Plaintiffs claim they are entitled to a judgment of rescission because they made a unilateral mistake of fact that resulted in an unconscionable loss to them and a corresponding unconscionable windfall to defendants. We conclude that plaintiffs are not entitled to rescission of the nonjudicial foreclosure sale because there was no irregularity in the sale. Under the common law claim of unilateral mistake, plaintiffs bore the risk of mistake, and thus relief cannot be granted on that ground.

*Standard of Review*

We review the record and the decision of the trial court de novo to determine if facts not subject to triable dispute warrant judgment for the moving party. (*Biancalana v. TD Services Co*. (2013) 56 Cal.4th 807, 813 (*Biancalana*).) To prevail, defendants must show that plaintiffs have not produced material facts that could be interpreted to support their claim. In other words, defendants must show that an element of the plaintiffs' claim

6

cannot be established with all the available facts. (Code Civ. Proc., § 437c, subd. (c);

*Kahn v. East Side Union High School Dist*. (2003) 31 Cal.4th 990, 1002–1003 (*Kahn*).)

The facts here are not disputed in any material way. The parties dispute only the

conclusions of law that can be drawn from the facts.

*Nonjudicial Foreclosure Sales*

"Civil Code sections 2924 through 2924k[2] . . . govern nonjudicial foreclosure

sales pursuant to a power of sale contained in a deed of trust. 'The purposes of this

comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick,

inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the

debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly

conducted sale is final between the parties and conclusive as to a bona fide purchaser.

[Citations.]' '[T]he statutory scheme also evidences an intent that a properly conducted

sale be a final adjudication of the rights of the creditor and debtor [citations] and the

sanctity of title of a bona fide purchaser be protected.' [Citation.] 'The trustee at a

foreclosure sale, moreover, has a duty to conduct the sale fairly and openly, and to secure

the best price for the trustor's benefit.' [Citation.]" (*Biancalana*, *supra*, 56 Cal.4th at

pp. 813–814; *Lona v. Citibank, N.A*. (2011) 202 Cal.App.4th 89, 101 (*Lona*).) "A bid at a

trustee's sale is deemed by statute to be an irrevocable offer by that bidder to purchase the

---

2       All further statutory references are to the Civil Code.

property for that amount. [Citation.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1237 (*Alliance Mortgage*); § 2924h, subd. (a).)[3]

"[A]s a general rule, a trustee's sale is complete upon acceptance of the final bid." (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 440–441 (*Nguyen*); § 2924h, subd. (c) ["the trustee's sale shall be deemed final upon the acceptance of the last and highest bid"].) The trustee conveys the lien or property by delivery of a trustee's deed to the purchaser. "Absent defects in the foreclosure procedure itself, delivery of the trustee's deed following a foreclosure sale is " 'merely a ministerial act.' " (*Nguyen*, at p. 441; see also *Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 819 (*Residential Capital*).) " 'If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly.' " (*Biancalana*, *supra*, 56 Cal.4th at p. 814.) This presumption becomes conclusive upon delivery of the trustee's deed to a bona fide purchaser. (*Ibid.*, *Lona*, *supra*, 202 Cal.App.4th at p. 102.) The trustee's deed delivered to plaintiffs here contained the requisite recitals.

A party can move in equity to set aside a nonjudicial foreclosure sale if there are irregularities in the notice or procedure of the sale. (*Lona*, *supra*, 202 Cal.App.4th at

---

3    Section 2924h, subdivision (a) states: "Each and every bid made by a bidder at a trustee's sale under a power of sale contained in a deed of trust or mortgage shall be deemed to be an *irrevocable offer by that bidder* to purchase the property being sold by the trustee under the power of sale for the amount of the bid." (Italics added.)

pp. 103–104.)  "[T]he elements of an equitable cause of action to set aside a foreclosure sale are:  (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering."  (*Id.* at p. 104.)  " ' " '[G]ross inadequacy of price coupled with even slight unfairness or irregularity is a sufficient basis for setting the sale aside.' " ' "  (*Biancalana*, *supra*, 56 Cal.4th at p. 814.)  Inequity of price is not sufficient alone to set aside a sale, however.  " 'Where there is no irregularity in a nonjudicial foreclosure sale and the purchaser is a bona fide purchaser for value, a great disparity between the sales price and the value of the property is not a sufficient ground for setting aside the sale.' "  (*Alliance Mortgage*, *supra*, 10 Cal.4th at p. 1237, quoting *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 832 (*Moeller*).)  There must be some unfairness or irregularity in the sale process, although the irregularity or unfairness may be slight, to rescind a nonjudicial foreclosure sale.  (*Biancalana*, at p. 814; *Lona*, at p. 104.)

The trial court granted judgment for defendants because it found "there was no irregularity, unfairness, or fraud in the notice and procedural requirements for the foreclosure sale."  We also conclude, after independent review, that plaintiffs produced no evidence demonstrating an irregularity in the notice and procedure of the sale. Plaintiffs first contend that irregularity was shown by the trustee's "forc[ing of] the trustee's deed upon [plaintiffs] over Mr. Matson's objection."  Delivery of the trustee's

9

deed, however, is a ministerial act after the sale has been completed by accepting the highest bid. (§ 2924h, subd. (c)[4]; *Residential Capital*, *supra*, 108 Cal.App.4th at p. 819; *Nguyen*, *supra*, 105 Cal.App.4th at p. 441.) Although, plaintiffs notified the trustee that they were rejecting the deed of trust and returned the deed to the trustee, these actions had no legal effect as the sale was completed upon acceptance of the final bid. Delivery of the deed by the trustee makes conclusive the presumption that the sale was properly conducted (*Biancalana*, *supra*, 56 Cal.4th at p. 814), and recordation of the deed perfects the title. (§ 2924h, subd. (c).) Although the purchaser ordinarily records the trustee's deed to perfect his title to the deed, the law does not specify who must record the deed. (*Ibid*.) The employee of the trustee who had the most knowledge about the practices and procedures of the trustee stated that the trustee had recorded the deed numerous times.

We further note that recording of the deed of trust by the trustee is not an irregularity in the notice or procedure of the sale because again, it occurs after the sale has been completed. Irregularities that are outside or "dehors" the notice and procedure of the sale may not be used to set aside a nonjudicial foreclosure sale. (*Nguyen*, *supra*, 105 Cal.App.4th at p. 445; *6 Angels, Inc. v. Stuart–Wright Mortgage, Inc*. (2001) 85 Cal.App.4th 1279, 1285; *Crofoot v. Tarman* (1957) 147 Cal.App.2d 443, 447.) Plaintiffs cited no authority in support of their claim that the recording of the deed of trust was part

---

4       Section 2924h, subdivision (c), states in part: "[T]he trustee's sale shall be deemed final upon the acceptance of the last and highest bid, and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 15 calendar days after the sale, or the next business day following the 15th day if the county recorder in which the property is located is closed on the 15th day."

of the sale procedure in their opening brief, and cited only one case in their reply brief, *Schep v. CapitalOne Bank, N.A.* (2017) 12 Cal.App.5th 1331. *Schep*, however, was not an action for rescission but for slander of title. In that context, the court held that the trustee's recording of a notice of sale, notice of default, and the trustee's deed were within the privilege for communications made without malice. (*Id.* at p. 1337.) *Schep* did not define or identify the actions that are part of the sale procedure and does not support plaintiffs' position. Recording of the trustee's deed occurred after the sale was concluded and does not satisfy the requirement of an irregularity in the notice and procedure of the sale.

Plaintiffs also claim that the trustee's recording of the deed after plaintiffs attempted to reject it was "willfully oppressive." However, nothing about the sale was willfully oppressive as plaintiffs voluntarily bid at the auction.

Plaintiffs further claim the sale was irregular because an employee of BSC, the beneficiary, was surprised at the high price paid for the deed of trust. Again, plaintiffs cite no legal authority for this claim. BSC's surprise occurred after the conclusion of the sale and had no influence on plaintiffs' decision to submit a bid of $502,000. BSC did not intentionally take advantage of plaintiffs' mistake. In *M.F. Kemper Const. Co. v. City of L.A.* (1951) 37 Cal.2d 696 (*Kemper*), where the city had knowledge of a contractor's unreasonably low bid before accepting that bid, the court found it would be unjust and unfair to permit the city to take advantage of the contractor's mistake. (*Id.* at pp. 702–703.) Here, BSC's representative did not know the amount of the bid until after the sale was already completed by plaintiffs' submission of their irrevocable offer of $502,000.

11

BSC did not intentionally take advantage of plaintiffs' mistake, as the city did in *Kemper*. The surprise of the BSC employee was outside the sale process.

We conclude defendants established that plaintiffs cannot prove their claim for rescission of the nonjudicial foreclosure sale because they have produced no evidence suggesting an irregularity, fraud or unfairness in the nonjudicial foreclosure notice and sale proceedings. (*Biancalana*, *supra*, 56 Cal.4th at p. 814; *Lona*, *supra*, 202 Cal.App.4th at 104.)

*Unilateral Mistake of Fact*

Plaintiffs contend that their claim may, and should, be reviewed under the common law contract principle of unilateral mistake of fact, relying on *California Golf, L.L.C. v. Cooper* (2008) 163 Cal.App.4th 1053, 1070 (*California Golf*) for the application of common law remedies to nonjudicial foreclosure sales.

In *California Golf*, as here, the buyers at a nonjudicial foreclosure sale had a change of mind after purchasing a deed with cashier's checks. The buyers sought to cancel the sale by falsely telling the bank that had issued the cashier's checks that the checks had been lost. Unlike here, the bank cancelled the cashier's checks, depriving the lender of the proceeds of the sale. (*California Golf*, *supra*, 163 Cal.App.4th at pp. 1058–1059.) The court held that the nonjudicial foreclosure sale statutory scheme did not prevent the loan beneficiary from suing the buyers for fraud and breach of warranty due to their fraudulent affidavits causing cancellation of the cashier's checks. The court stated, "although the statutory scheme governing nonjudicial foreclosures has, in certain circumstances, been held to constitute the exclusive civil remedy for wrongdoing in the

12

context of a nonjudicial foreclosure, that exclusivity cannot be applied to immunize the fraudulent and apparently felonious conduct of [the buyers] in this case. . . . [¶] California courts have repeatedly allowed parties to pursue additional *remedies for misconduct* arising out of a nonjudicial foreclosure sale *when not inconsistent with the policies behind the statutes*." (*Id*. at pp. 1067, 1070, italics added.)

We note plaintiffs are not pursuing a remedy for misconduct by defendants. Rather, they are seeking to set aside their own irrevocable offer and the procedurally correct notice and sale, based on their own mistake. That is inconsistent with the policies behind the nonjudicial foreclosure statutes. (See *California Golf*, *supra*, 163 Cal.App.4th at p. 1070.) Permitting a common law claim of mistake by the buyer to void the sale would deprive the beneficiary of a quick, inexpensive and efficient remedy. It would upend the finality of the sale and the statutory intent that a properly conducted sale be final among the parties. (*Moeller*, *supra*, 25 Cal.App.4th at p. 830 [nonjudicial foreclosure sale statutes prevent debtor from contesting validity of nonjudicial foreclosure sale in which property sold for one-quarter of its value].) A buyer's withdrawal from an irrevocable offer due to its own mistake "would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings." (*Id*. at p. 834.)

Nonetheless, the trial court considered this argument at the hearing on the motion for summary judgment and found that plaintiffs could not rescind the nonjudicial foreclosure sale based on their own unilateral mistake. The trial court found that the

13

plaintiffs bore the risk of mistake by engaging in the sale. It stated that Matson should have investigated the lien more closely. The court continued, "[T]he mistake can't be the result of neglect of a legal duty. You can't be careless and [Matson] was careless." The court emphasized the riskiness of purchasing deeds of trust at foreclosure sales, and the fact that Matson had a title report but did not take the time to read it. After independent review, we reach the same conclusion.

Plaintiffs also contend they have a common law remedy based on *Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 281–282 (*Donovan*). In *Donovan*, an automobile dealer placed an advertisement in a newspaper to sell a car. The newspaper made typographical and proofreading errors that resulted in the advertisement listing a price that was significantly below the intended sales price. Buyers offered the advertised price for the car. The dealer refused to accept the erroneous offer. The buyers sued the dealer for breach of contract. (*Id.* at pp. 266–267.) The Supreme Court held that although a Vehicle Code section required the dealer to sell at an advertised price, that statute did not exclude common law principles authorizing rescission of a contract on the ground of mistake. Rescission was warranted because the seller's unilateral failure to discover typographical and proofreading errors was made in good faith, the seller did not bear the risk of the mistake, and enforcement of the contract with the erroneous price would be unconscionable. (*Id.* at p. 267.) The dealer did not neglect a legal duty because the mistake was a matter of ordinary negligence or carelessness, such as sometimes occurs in the conduct of "reasonable and cautious businesspersons." (*Id.* at p. 283.)

14

The *Donovan* court set forth the following grounds for a party to establish rescission based upon unilateral mistake (changing the identification of parties to fit the facts of this case); "Where the [defendant] has no reason to know of and does not cause the [plaintiff's] unilateral mistake of fact, . . . : (1) the [plaintiff] made a mistake regarding a basic assumption upon which the [plaintiff] made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the [plaintiff]; (3) the [plaintiff] does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable." (*Donovan*, *supra*, 26 Cal.4th at p. 282.) Plaintiffs here concentrate their argument on claiming that enforcement of the contract would be unconscionable as to them, because the price they paid substantially exceeded the fair market value of the deed of trust. They cannot, however, meet the third requirement, that they do not bear the risk of mistake.

In *Donovan*, the court examined section 154 of the Restatement Second of Contracts. (*Donovan*, *supra*, 26 Cal.4th at p. 283.) That section states, "A party bears the risk of a mistake when . . . (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient. . . ." (*Ibid*.) That was the case here. Matson obtained a 94-page title report but did not read it thoroughly. (See also *Amin v. Superior Court* (2015) 237 Cal.App.4th 1392.)

Acting with limited knowledge was not the error in *Donovan*. The court granted relief to the car dealer because he acted with the care common to a "reasonable and cautious businessperson" in delegating to the newspaper the printing of the car price in

the advertisement. (*Donovan*, *supra*, 26 Cal.4th at p. 283.) Matson, on the other hand, did not act as a cautious businessperson in deciding to bid at a nonjudicial foreclosure sale in full reliance on a private software application, without his own thorough investigation of the liens on the property.

Here, Matson intended to make an offer of $502,000, in order to submit the highest bid over two other bidders. He did not make a mere clerical error. Plaintiffs were not entitled to relief under the common law principle of a unilateral mistake of fact due to their error in judgment in intentionally making that high offer.

### DISPOSITION

The judgment is affirmed. Defendants are to recover costs on appeal.

BENKE, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.

16