Filed 6/26/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CONNER APPLEGATE,<br><br>        Plaintiff and Appellant,<br>v.<br><br>CARRINGTON FORECLOSURE<br>SERVICES, LLC, et al.,<br><br>        Defendants and Respondents. | A170085<br><br>(Marin County Super. Ct.<br>No. CIV2201826) |

Plaintiff Conner Applegate sued defendants Carrington Foreclosure Services, LLC (CFS) and Wilmington Savings Fund Society, FSB, as Trustee of ACM Stanwich Alamosa 2020 Trust (WSF), asserting various claims based on his allegation that CFS and WSF violated Civil Code section 2924m in their handling of a foreclosure sale.

Applegate appeals the judgment entered after the trial court granted defendants' motion for summary judgment. We affirm.

**BACKGROUND**

*Civil Code Section 2924m's Alternative Process for Foreclosure Sales*

We begin with a brief description of the relatively new statute at issue in this appeal. The Legislature added Civil Code section 2924m to California's comprehensive statutory scheme on nonjudicial foreclosure sales[1]

---

[1] Civil Code section 2924, et seq., provides a " 'comprehensive scheme' " governing "nonjudicial foreclosure sales pursuant to a power of sale contained

1

effective January 1, 2021, to "prescribe an alternative process" for foreclosures involving residential properties of one to four units. (Legis. Counsel's Dig., Sen. Bill No. 1079, Stats. 2020 (2019–2020 Reg. Sess.), ch. 202.) Section 2924m was part of "a series of measures intended to mitigate against blight, vacancy, and the transfer of residential property ownership from owner-occupants to landlord investors in the event that California experiences a wave of foreclosures." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1079 (2019-2020 Reg. Sess.) as amended May 13, 2020.)

Generally, a trustee's sale (that is, a foreclosure sale) is deemed complete and final when the last and highest bid is accepted at the trustee's public auction of the property subject to foreclosure. (*Millennium Rock Mortgage, Inc. v. T.D. Service Co.* (2009) 179 Cal.App.4th 804, 809 ["The sale is deemed complete, for most purposes, when the auctioneer accepts the final bid."]; § 2924h, subd. (c) ["the trustee's sale shall be deemed final upon the acceptance of the last and highest bid"].)

Under section 2924m, however, for "real property containing one to four residential units," a foreclosure sale will be deemed final at the conclusion of the public auction *only if* "a prospective owner-occupant is the last and highest bidder."[2] (§ 2924m, subd. (c)(1).) In any other case, the acceptance of

---

in a deed of trust." (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813–814.) Further undesignated statutory references are to the Civil Code.

[2] For purposes of the statute, "[p]rospective owner-occupant" "means a natural person who presents to the trustee an affidavit or declaration, pursuant to Section 2015.5 of the Code of Civil Procedure, that:

"(A) They will occupy the property as their primary residence within 60 days of the trustee's deed being recorded.

"(B) They will maintain their occupancy for at least one year.

the last and highest bid at the public auction does *not* signal the completion of the foreclosure sale, and, instead, there is a brief period following the auction during which certain individuals and entities may submit bids matching or exceeding the amount of the highest bid from the auction.

Specifically, section 2924m provides that, if the public auction is not won by a prospective owner-occupant, the "trustee's sale of . . . real property containing one to four residential units . . . shall not be deemed final" until the earliest of the following: (1) 15 days after the public auction, if no "eligible bidder"[3] submits a bid or notice of intent to place such a bid within the 15 days following the auction (*id.*, subd (c)(2)), (2) the date when "a representative of all of the eligible tenant buyers submits to the trustee a bid in an amount equal to the full amount of the last and highest bid at the trustee's sale," so long as the bid or a notice of intent to bid is submitted within 15 days of the auction and the bid is submitted within 45 days of the auction (*id.*, subd. (c)(3)(A)), or (3) 45 days after the public auction, during

---

"(C) They are not any of the following: [¶] (i) The mortgagor or trustor. [¶] (ii) The child, spouse, or parent of the mortgagor or trustor. [¶] (iii) The grantor of a living trust that was named in the title to the property when the notice of default was recorded. [¶] (iv) An employee, officer, or member of the mortgagor or trustor. [¶] (v) A person with an ownership interest in the mortgagor, unless the mortgagor is a publicly traded company.

"(D) They are not acting as the agent of any other person or entity in purchasing the real property." (§ 2924m, subd. (a)(1).)

[3] An "eligible bidder" includes "[a] prospective owner-occupant," "[a]n eligible tenant buyer," and various other specified entities including nonprofit corporations, community land trusts, and public entities. (§ 2924m, subd. (a)(3).) An "eligible tenant buyer" is "a natural person who at the time of the trustee's sale" occupies the "property as their primary residence" "under a rental or lease agreement entered into as the result of an arm's-length transaction" and who meets certain other requirements. (*Id.*, subd. (a)(2).)

which time "an eligible bidder may submit to the trustee a bid in an amount that exceeds the last and highest bid at the trustee's sale" (*id*., subd. (c)(4)(A)).

*Facts*

With the applicable statutory foreclosure process in mind, we turn to the facts of this case. In 2007, Charles and Anna Utzman (Borrowers) executed a deed of trust for a single-family home in Mill Valley (Property) securing a loan for $1,365,000. At all relevant times, CFS was the trustee and WSF was the beneficiary of the deed of trust.

Borrowers failed to pay their loan, and in August 2021, CFS recorded a "Notice of Default and Election to Sell Under Deed of Trust" for the Property.

On December 2, 2021, CFS recorded a "Notice of Trustee's Sale" for the Property, which specified the "unpaid balance and other charges" amounted to $2,096,064.11.

On May 12, 2022, CFS held a public auction, and the beneficiary, WSF, won the auction with a bid of $100. However, the sale was not completed because, according to CFS, "the sale was cancelled and unwound on May 18, 2022, at the request of the beneficiary," WSF.

On May 23, 2022, Applegate mailed a "Notice of Potential Intent to Bid (Pursuant to CCC § 2924(m)." Applegate's notice did not comply with section 2924m as it did not include an affidavit or declaration stating every requirement for a "prospective owner-occupant" specified in subdivision (a)(1) of the statute.[4]

---

[4] Applegate's notice did not "present the trustee an affidavit or declaration" that he was not "[t]he grantor of a living trust that was named in the title to the property when the notice of default was recorded" (§ 2924m, subd. (a)(1)(C)(iii)), "[a]n employee, officer, or member of the mortgagor or trustor (*id*., subd. (a)(1)(C)(iv), or "[a] person with an ownership interest in

4

On or about June 1, 2022, CFS informed Applegate that the Property had been pulled from the market and that CFS was not accepting bids for the Property.

Nonetheless, on June 13, 2022, Applegate sent CFS a letter titled "Notice of Bid" with a cashier's check in the amount of $575,000. Again, Applegate's bid did not include an affidavit or declaration that complied with section 2924m.[5]

On June 17, 2022, CFS returned Applegate's check. In its enclosure letter to Applegate, CFS explained there would "be no post-auction bid process and we cannot accept your Notice of Intent to Bid or your post-auction bid. Your funds in the amount of $575,000.00 are returned herewith."

On June 22, 2022, Applegate sent CFS a "Corrected Notice of Bid," which, he wrote, "correct[ed] a typographical error in [his] original June 13, 2022 bid," but which still did not include an affidavit or declaration that complied with section 2924m. On June 28, CFS returned Applegate's funds.

On February 17, 2023, CFS recorded another "Notice of Trustee's Sale" for the Property. CFS conducted a trustee's sale and subsequently recorded a "Trustee's Deed Upon Sale" on April 14, 2023. WSF was the winning bidder, purchasing the Property for $2,301,746.98, the amount of the unpaid debt.

---

the mortgagor, unless the mortgagor is a publicly traded company" (*id*., subd. (a)(1)(C)(v)).

[5] Again, Applegate's declaration failed to state that he was not "[t]he grantor of a living trust that was named in the title to the property when the notice of default was recorded" (§ 2924m, subd. (a)(1)(C)(iii)), "[a]n employee, officer, or member of the mortgagor or trustor (*id*., subd. (a)(1)(C)(iv), or "[a] person with an ownership interest in the mortgagor, unless the mortgagor is a publicly traded company" (*id*., subd. (a)(1)(C)(v)).

*Applegate's Lawsuit*

In the operative complaint, Applegate alleged that CFS "attempted to wrongfully rescind the post-foreclosure [section] 2924m bidding window for eligible bidders, in violation of the civil code" and "improperly rejected [his] bid." He further alleged, upon information and belief, that he submitted the highest bid for the Property within the 45-day period following the public auction held May 12, 2022. Applegate asserted claims for (1) "violation of Civil Code section 2924m," (2) "violation of Business and Professions Code section 17200," (3) "quiet title," (4) "declaratory relief," and (5) "injunctive relief." (Capitalization omitted.)

CFS and WSF successfully moved for summary judgment.

In its written order granting defendants' motion, the trial court explained that Applegate's first cause of action for violation of section 2924m failed for three independent reasons. First, the court concluded the Legislature did not intend to create a private right of action for a violation of section 2924m. Second, even assuming Applegate could bring a claim under section 2924m, "the undisputed facts show that the May 12, 2022 Trustee sale was rescinded [and] unwound before it became a final sale at the request of the beneficiary," and "Applegate failed to provide any authority to support his claim that the re[s]cission or unwinding was unlawful." Third, Applegate "failed to submit a notice of intent to bid [or bid] which satisfied the mandatory provisions of [section 2924m]," and only "compliance [with] these mandatory provisions . . . would create the duties and obligations that Defendants are alleged to have breached."

The trial court found Applegate's failure to show a viable claim under section 2924m disposed of his remaining claims, which were premised on or derivative of the alleged violation of section 2924m.

6

Judgment was entered on February 6, 2024, and Applegate timely appealed.

## DISCUSSION

A. *Standard of Review*

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "A defendant . . . has met that party's burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto. The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (*Id.*, subd. (p)(2).)

We review an order granting summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)

B. *First Cause of Action—Claim of Violation of Section 2924m*

The entire basis for Applegate's claim of violation of section 2924m is his allegation that CFS "attempted to wrongfully rescind the post-foreclosure 2924m bidding window for eligible bidders, in violation of the civil code."[6]

---

[6] CFS and WSF vigorously argue there is no private right of action for alleged violations of section 2924m. We need not decide the issue because,

7

But, as the trial court explained, Applegate has failed to provide any authority for the proposition that it is unlawful for a trustee to rescind or cancel a foreclosure sale before the sale is deemed final. Statutory and case law is to the contrary.

A trustee under a deed of trust[7] "has discretionary authority to postpone [a foreclosure] sale to protect either the trustor's or the beneficiary's interest. [Citation.] In addition, Civil Code section 2924g, subdivision (c)(1) *expressly* grants the trustee authority to postpone the sale upon request of the beneficiary. Once the sale is postponed, all bids are automatically cancelled." (*Hatch v. Collins* (1990) 225 Cal.App.3d 1104, 1113.)

Section 2924g, subdivision (c)(1), provides that a foreclosure sale may be postponed, "*upon instruction by the beneficiary* to the trustee that the sale proceedings be postponed, at any time *prior to the completion of the sale.*" (Italics added.) That is what occurred here. Because the Property is covered by section 2924m, the end of the public auction on May 12, 2022, did not complete the sale. Six days after the auction and prior to the completion of the sale,[8] the trustee rescinded—in effect, postponed—the sale upon the

---

even assuming there is a private right of action, we conclude defendants are entitled to judgment as a matter of law.

[7] A "trustee under a deed of trust 'is not a true trustee, and owes no fiduciary obligations; [it] merely acts as a common agent for the trustor and beneficiary of the deed of trust. [The trustee's] . . . duties are: (1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust.' " (*Heritage Oaks Partners v. First American Title Ins. Co.* (2007) 155 Cal.App.4th 339, 345.)

[8] Since WSF (not a prospective owner-occupant) won the public auction and there is no claim that eligible tenant buyers submitted a timely bid, the foreclosure sale could have been deemed complete no earlier than 15 days after the public auction. (§ 2924m, subd. (c)(3).)

8

instruction by the beneficiary, WSF.  This was permitted under section 2924g.

*Pacific Ready-Cut Homes v. Title Guarantee & Trust Co.* (1929) 103 Cal.App. 1, an appeal heard in our appellate division nearly 100 years ago, is also instructive.  In that case, the plaintiff alleged the trustee held a public auction on property for which a debt of $101,324.98 was owed; the plaintiff made the highest bid of $13,000, but the trustee "refused to accept the money or execute the deed," and, instead, "publicly announced the postponement of the sale"; and the trustee did so on "the sole ground that the bid made by plaintiff was inadequate and for the purpose of obtaining a better price for said property." (*Id.* at pp. 2–3.)  The plaintiff sought an order compelling defendant to sell the property to the plaintiff for $13,000.  (*Id.* at p. 3.)  This court held the plaintiff failed to state a cause of action explaining, "the rule of law applicable to the power of a trustee or mortgagee to sell by public auction is to the effect that in the exercise of a sound discretion a sale may be adjourned by him, in order to obtain a fair price for the property; without such power the property might be sacrificed to the detriment of both the creditor and debtor." (*Id.* at p. 5.)  We concluded that the trustee in that case "had the power to continue the sale even after bids had been received." (*Id.* at p. 6.)

Similarly, in the present case, the trustee, CFS, had the discretion and authority to continue the sale after bids had been received but before the sale had become final, and CFS acted on that authority at the request of the beneficiary (that is, the creditor), WSF.  Presumably, WSF asked to postpone the sale to protect its own interest in the Property, and CFS clearly had "discretionary authority to postpone the sale to protect . . . the beneficiary's interest" (*Hatch v. Collins*, *supra*, 225 Cal.App.3d at p. 1113).

9

Applegate has not shown CFS's conduct was unlawful. He argues rescission of a foreclosure sale is permitted only in certain circumstances and a mere desire to obtain a higher price does not justify rescission. The cases he cites are inapposite, however, because they all involve the rules that apply to foreclosure sales that were deemed final at the conclusion of public auction.[9] But, in the case of a residential property of one to four units as here, under section 2924m, the conclusion of a public auction does not complete the foreclosure sale unless a prospective owner-occupant is the last and highest bidder. (§ 2924m, subd. (c)(1).) Because there was no final or complete foreclosure sale, CFS was free to postpone the sale (§ 2924g, subd. (c)(1) and, thus, "unwind" the public auction that had taken place on May 12, 2022.

Applegate argues there is conflicting evidence as to whether the trustee's sale was rescinded and unwound, but he is mistaken. There is no evidence in the record that a foreclosure sale for the Property was completed in May or June of 2022, and there is evidence that a foreclosure sale was subsequently completed in April 2023. As a legal matter, Applegate claims CFS's conduct violated section 2924m, but he has not raised a material issue of fact as to whether a foreclosure sale was completed in 2022.

---

[9] In *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 833, the property was sold to bona fide purchasers for value at a trustee's sale, and a trustee's deed was delivered to purchasers. In *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1357, the plaintiff was the highest bidder at a public auction, and under the usual rules, the sale was "deemed final upon the acceptance of the last and highest bid" at the public auction. (§ 2924h, subd. (c).) *Whitman v. Transtate Title Co.* (1985) 165 Cal.App.3d 312, 316, and *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279, 1282, similarly involved sales plaintiffs who were the highest bidders at the conclusion of public auctions, and so the sales were deemed final.

We also agree with the trial court that Applegate's first cause of action fails as a matter of law because he did not comply with section 2924m's requirements for bids and notices of bid.  On appeal, Applegate argues he "substantially complied" with the statute and his notice "clearly communicated his status as a prospective owner-occupant and his intent to bid, fulfilling the core purpose of section 2924m's notice requirements."  But a "[p]rospective owner-occupant" under section 2924m is not merely a person who meets certain requirements.  The phrase expressly "means a natural person who *presents to the trustee an affidavit or declaration . . .* that: [¶] (A) They will occupy the property as their primary residence within 60 days of the trustee's deed being recorded.  [¶] (B) They will maintain their occupancy for at least one year.  [¶] (C) They are not any of the following: [¶] (i) The mortgagor or trustor.  [¶] (ii) The child, spouse, or parent of the mortgagor or trustor.  [¶] (iii) The grantor of a living trust that was named in the title to the property when the notice of default was recorded.  [¶] (iv) An employee, officer, or member of the mortgagor or trustor.  [¶] (v) A person with an ownership interest in the mortgagor, unless the mortgagor is a publicly traded company.  [¶] (D) They are not acting as the agent of any other person or entity in purchasing the real property."  (§ 2924m, subd. (a)(1), italics added.)  Applegate never presented a declaration stating that he was not "[t]he grantor of a living trust that was named in the title to the property when the notice of default was recorded," that he was not "[a]n employee, officer, or member of the mortgagor or trustor," and that he was not "[a] person with an ownership interest in the mortgagor, unless the mortgagor is a publicly traded company."  On this record, Applegate cannot prove he was a "prospective owner-occupant" as the phrase is defined in section 2924m.

11

Even if we were to assume the doctrine of substantial compliance applies to section 2924m (but see *Prang v. Los Angeles County Assessment Appeals Board No. 2* (2020) 54 Cal.App.5th 1, 19 ["strict compliance with a statute is warranted when our Legislature evinces its intent that the statute's requirements are to be followed precisely"], we would reject Applegate's claim that his notice and letters substantially complied with the statute. " ' "Substantial compliance, as the phrase is used in the decisions, means *actual* compliance in respect to the substance essential to every reasonable objective of the statute." ' " (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1332.)

Under section 2924m's alternative process, after the public auction, only persons and entities that meet certain statutory requirements are eligible to submit post-auction bids to the trustee. It seems apparent that an objective of section 2924m's declaration requirement is to provide proof to the trustee that a person submitting a post-auction bid is in fact eligible to do so under the statute. A trustee need not, and indeed should not, accept post-auction bids from persons who are not eligible to submit such bids. But a person who submits a post-auction bid *without* declaring under penalty of perjury that he or she is neither "[t]he grantor of a living trust that was named in the title to the property when the notice of default was recorded," "[a]n employee, officer, or member of the mortgagor or trustor," nor "[a] person with an ownership interest in the mortgagor, unless the mortgagor is a publicly traded company" (as Applegate did in this case) has not demonstrated eligibility to bid under the statute. (§ 2924m, subd. (a)(1).) We therefore conclude Applegate's notice, bid, and corrected bid did not actually comply with the substance essential to every objective of section 2924m.

For these reasons, summary judgment was properly granted as to Applegate's first cause of action for violation of section 2924m.

C. *Request for Leave to Amend the Pleadings*

Applegate contends the trial court abused its discretion in denying his request for leave to amend his pleadings. We disagree.

1. Background

Applegate never filed a motion seeking leave to amend his complaint; nor did he mention a desire to amend his complaint in his opposition to defendants' motion for summary judgment. At the hearing on the motion for summary judgment, his counsel mentioned the possibility of amending the complaint as follows: "I think what we would argue is that there was collusion between the two parties to fraudulently deny ineligible [*sic*] bidders the chance to bid as they are required to do so under 2429m. So I think they were likely acting at the direction of the beneficiary, but I think in a fraudulent way." She continued, "The last thing is relating to—and what I was just discussing—the collusion between the parties because of the subsequent sale that occurred . . .[in] 2023, that we've raised that in our Opposition and in other papers, but that we believe it would be more properly considered by the Court in an Amended Complaint. So we just are asking for Leave to Amend a Complaint and continue this hearing until we have a chance to put that on the record."[10]

Defendants' counsel objected to Applegate's request for leave to amend stating: "We are now I believe half a month away from trial at this point in time. It's too late to amend the pleadings. There hasn't been any request

---

[10] As far as we can tell, neither "collude" nor "collusion" is mentioned in Applegate's opposition; nor do either of these words appear anywhere else in the reporter's transcript of the hearing.

made previously. [¶] Plaintiff has been well aware of the fact that no sale proceeded, and had plenty of time to make such an amendment. And at this point in time it would be improper and unfair to my client to deny the MSJ and grant" leave to amend.

The trial court denied Applegate's oral requests for leave to amend made during the oral argument on the summary judgment motion.

2.    Analysis

"A trial court has wide discretion to allow the amendment of pleadings, and generally courts will liberally allow amendments at any stage of the proceeding. . . . But if the proposed amendment fails to state a cause of action, it is proper to deny leave to amend. [Citation.] [¶] Further, unwarranted delay in seeking leave to amend may be considered by the trial court when ruling on a motion for leave to amend [citation], and appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is ' "offered after long unexplained delay . . . or where there is a lack of diligence" ' [Citation.] Thus, when a plaintiff seeks leave to amend his or her complaint only after the defendant has mounted a summary judgment motion directed at the allegations of the unamended complaint, even though the plaintiff has been aware of the facts upon which the amendment is based, '[i]t would be patently unfair to allow plaintiffs to defeat [the] summary judgment motion by allowing them to present a "moving target" unbounded by the pleadings.' " (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280.)

We see no abuse of discretion. We do not understand what Applegate's counsel was suggesting as a proposed amendment to the complaint. On this record, it would have been within the trial court's discretion to deny the request for leave to amend either because Applegate failed to proffer an

14

amendment that stated a cause of action or because the circumstances demonstrated unexplained delay, lack of diligence, and unfairness to defendants.

D.     *Remaining Claims*

Applegate argues the trial court erred in granting summary judgment as to his remaining claims because they "are independently viable . . . even if the court found deficiencies in the section 2924m claim." This argument lacks merit.

For his second cause of action, Applegate alleged CFS and WSF violated Business and Professions Code section 17200 by failing to follow the requirements of section 2924.[11] On appeal, Applegate asserts, "The denial of his *statutory right* to compete in a fair bidding process is itself a compensable injury, regardless of whether the bid funds were returned." (Italics added.) But the "statutory right" he claims was denied is the alleged violation of section 2924m, and, as we have explained above, his claim of violation of section 2924m fails as a matter of law. The trial court correctly found that Applegate's claim under Business and Professions Code section 17200 fails because he cannot prove a violation of section 2924m.[12]

---

[11] Applegate alleged CFS and WSF violated Business and Professions Code section 17200 by "by engaging in unlawful, unfair, and fraudulent business acts or practices, including but not limited to: [¶] a. Breaching their duties to conduct non-judicially supervised foreclosure trustee sales in accordance with the Civil Code; [¶] b. Failing to accept post-sale bids as required by Civil Code § 2924m; [¶] c. Failing to conduct post-foreclosure proceedings as required by Civil Code § 2924m; and [¶] d. Transferring or attempting to transfer the Subject Property back to the Beneficiary in violation of Civil Code § 2924m." He alleged defendant "intentionally acted with malice, fraud, and oppression in refusing to accept [his] bid."

[12] To the extent Applegate tries to offer new theories for liability under Business and Professions Code section 17200 on appeal, such theories could

Applegate's third cause of action for quiet title is based on his allegation that he is the "sole owner" of the Property as of "date upon which [he] submitted to [CFS] his eligible corrected bid."  This claim hinges on Applegate's theory that CFS was required to accept his bid because section 2924m prohibited CFS from postponing the foreclosure sale after the public auction occurred but before the sale became final.  As we have explained, there is no such prohibition in section 2924m.

Applegate's fourth cause of action for declaratory relief fails because the claim is based on his meritless allegation that CFS's failure to accept his bid was a violation of section 2924m.

Finally, Applegate's fifth cause of action for injunctive relief fails because "[i]njunctive relief is a remedy, not a cause of action."  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 65.)

## DISPOSITION

The judgment is affirmed.

---

not provide grounds for reversal.  Defendants in this case "had the burden on summary judgment of negating only those ' "theories of liability *as alleged in the complaint.*" ' "  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1254.)  In any event, Applegate's argument on appeal that CFS engaged in a "bait-and-switch tactic" relies on a theory of "nullifying [the] rights" of prospective post-auction bidders.  But such rights could only arise from section 2924m, and Applegate cannot show a violation of section 2924m.

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P. J.


_____
Desautels, J.


A170085, *Applegate v. Carrington Foreclosure Services, LLC, et al.*

17

Trial Court:  Superior Court of Marin County

Trial Judge:  Hon. Andrew E. Sweet

Law Offices of Christopher R. Kelley, Virginia Ashley Clinkenbeard for Plaintiff and Appellant

Wright, Finlay & Zak, Lukasz I. Wozniak, Jonathan D. Fink for Defendants and Respondents

A170085, *Applegate v. Carrington Foreclosure Services, LLC, et al.*